1

The Honorable Marsha J. Pechman

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10   KING COUNTY, a Washington municipal
corporation,

11                        Plaintiffs,

No. 14-cv-1957-MJP

12          v.

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT ON BAD
FAITH FAILURE TO DEFEND
AGAINST DEFENDANT
PROVIDENCE

13   TRAVELERS INDEMNITY COMPANY, a
Connecticut corporation; AETNA
14   CASUALTY AND SURETY COMPANY, a
Connecticut corporation; HARTFORD
15   ACCIDENT AND INDEMNITY
COMPANY, a Connecticut corporation;
16   PROVIDENCE WASHINGTON
INSURANCE COMPANY, a Rhode Island
17   corporation; AMERICAN HOME
ASSURANCE COMPANY, a New York
18   corporation,

NOTING DATE:

**August 28, 2015**

19                        Defendants.

20

21

22

23

24

25

26

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 1
No. 14-cv-1957-MJP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In July 2013, King County tendered suits for environmental cleanup costs to its insurance carrier Providence Washington Insurance Company ("Providence") seeking a defense and indemnity.  Upon receipt, Providence had an obligation to promptly determine whether the suits triggered its duty to defend the County under its policy and, if so, to defend the County.  To this day, Providence has neither issued a decision on the County's tender nor defended, forcing the County to continue to fund its own defense more than two years after tender.  As demonstrated below, King County is entitled to summary judgment on its tort claim for bad faith failure to defend.

## I.      BACKGROUND

Providence issued primary general liability insurance to King County.  Declaration of Jennifer Hills ("Hills Decl.") at Exhibit 1.  The policy contains an express agreement to defend King County against covered suits:

> In consideration of the payment of the premium . . . the Company [Providence] will pay on behalf of the insured [King County] all sums the insured shall become obligated to pay as damages because of . . . property damage . . . to which this insurance applies . . . *and the company shall have the right and duty to defend any suit against the insured seeking damages . . . even if any of the allegations of the suit are groundless, false or fraudulent.*

Id. at 2 (emphasis added).

By way of its certified letter dated July 19, 2013, King County tendered certain underlying suits related to the Lower Duwamish Waterway Superfund Site ("Lower Duwamish") and the East Waterway operable unit of the Harbor Island Superfund Site ("East Waterway") to Providence and to the County's other insurance carriers.  Declaration of John Bjorkman ("Bjorkman Decl.") at ¶¶ 3-8, Exhibit A.  The underlying suits include a United States Environmental Protection Agency ("EPA") and Washington Department of Ecology

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 2
No. 14-cv-1957-MJP

("Ecology") joint enforcement action against King County compelling the investigation and cleanup of the Lower Duwamish ("Enforcement Action").  Declaration of William E. Blakney ("Blakney Decl.") at ¶ 3; Bjorkman Decl. ¶ 8, Exhibit D.  Ecology initiated the Enforcement Action in 2000 with a notice letter to the County that it was potentially liable for cleanup costs.  Bjorkman Decl. at Exhibit C.

The County also tendered a litigation-style allocation process among King County and 44 other parties seeking to divide up the past investigation costs and future cleanup cost obligations to EPA and Ecology for the Lower Duwamish ("Allocation Case").  Bjorkman Decl. at ¶ 5.  The process for the Allocation Case was being negotiated at the time of tender in July 2013 and it formally commenced in April 2014.  Id. at ¶ 9.  In addition, King County tendered two earlier lawsuits arising out of "Early Action Area" cleanup actions in locations that are part of the Lower Duwamish Site, both of which the County had settled ("Early Action Lawsuits").  Id. at ¶ 7.  Finally, the County tendered another EPA enforcement action for the East Waterway operable unit of Harbor Island, a separate (though adjoining) Superfund site ("East Waterway").  Bjorkman Decl. at ¶ 6.  Though the County is no longer incurring defense costs for the Early Action Lawsuits, the County has and will continue to incur defense costs for East Waterway, the Enforcement Action, and the ongoing Allocation Case.  Blakney Decl. at ¶¶ 4-5; Bjorkman Decl. ¶¶ 4-6.

King County's July 2013 tender to Providence for the above suits expressly demanded that Providence defend King County under the terms of its policy:

> King County tenders the defense of the following claims and makes demand for indemnification of all losses, costs and expenses related thereto under the above referenced [Providence policy.]

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 3
No. 14-cv-1957-MJP

Bjorkman Decl. Exhibit A at 1.  To aid Providence in making its defense determination, the County's July 2013 tender included copies of: (a) all applicable insurance policies, including the Providence policy ("the Policy"); (b) Ecology's Lower Duwamish notice letter formally stating its decision that the County was potentially liable for cleanup costs; (c) an EPA and Ecology administrative order for the Lower Duwamish compelling the initial study of the scope and extent of contamination and requiring the development of remedial alternatives; (d) relevant notice letter for East Waterway; (e) information on the Allocation Case; and, (f) the two Early Action Lawsuits and settlements for the Lower Duwamish Early Action Area cleanup costs.  Id. at ¶ 8-9.

Although Providence acknowledged receipt of the County's tender of defense by way of its letter dated July 29, 2013 ("July Letter"), it neither accepted nor denied defense of the County, instead providing a list of grounds upon which it reserved the right to deny coverage. Id. at Exhibit G.  Providence also asked the County to "provide additional details on the nature of the activities and dates thereof" that gave rise to the claims tendered, along with the contact information of a knowledgeable person at the County.  Id.

King County compiled information that a number of its carriers had requested, and on September 11, 2013, submitted a consolidated response to all of its carriers' questions and requests.  Id. at Exhibit H.  In the consolidated response, the County specifically addressed both of Providence's requests for information:  the County provided additional information on the timing and nature of activities giving rise to the underlying suits, and indicated that the County's attorneys were the appropriate point of contact for Providence.  For the next year and a half, King County continued to provide regular status updates on the underlying suits,

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 4
No. 14-cv-1957-MJP

1
2

but received no further substantive communication from Providence.  Id. at ¶ 12, Exhibits I and J.

3
4
5
6
7
8
9
10
11

Between 2013 and 2014, three other carriers providing similar liability insurance to King County, and who had received identical information as Providence, accepted their duty to defend.  Id. at ¶ 13, Exhibit K.  Two of the three carriers have not yet paid any of the County's defense costs.  Id. at ¶ 14.  The third paid a portion of the costs but has since sued King County to recover its payment, claiming the effect of a prior settlement with the County.  Id., see  Continental Cas. Co. v. King County, No. 2:15-cv-797, Dkt. No. 1 (W.D. Wash. May 21, 2015).  Thus, adding to the County's frustration with all of its insurance carriers, King County is still paying its own defense costs two years after tender.

12
13
14
15
16
17
18

After waiting 18 months for a decision from Providence, King County brought this case for bad faith failure to defend.  Complaint at Dkt. No. 1.  Rather than recognizing its defense obligation, Providence filed a counterclaim against the County seeking a declaratory judgment that it has no duty to defend or indemnify King County.  Providence's Answer to First Amended Complaint and Affirmative Defenses and Counterclaim ("Answer"), Dkt. No. 45 at 13-14.

19
20

## II.     ARGUMENT

21

### A.     There is No Issue of Material Fact Precluding Summary Judgment.

22
23
24
25
26

The Court should grant summary judgment if the pleadings and evidence, viewed in the light most favorable to the non-moving party, demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000).  If the moving party makes such a showing, the non-movant must respond with "specific facts"

demonstrating material issues of fact remain for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The facts at issue here are undisputed: Providence failed to make a defense determination as required by Washington law. All relevant facts are before the Court, rendering summary judgment appropriate.

**B.    Providence Acted in Bad Faith by its Unconscionable Delay in Rendering a Defense Determination and by its Ultimate Failure to Defend.**

The business of insurance impacts the public interest, and as such, "[i]nsurance companies must conduct their relations with their insureds in good faith." <u>Coventry Assoc. v. Am. States Ins. Co.</u>, 136 Wn.2d 269, 276 (1998). Consistent with this obligation, it is hornbook Washington insurance law that Providence may not put its own interests above those of its insured. <u>Am. Best Food, Inc. v. Alea London, Ltd.</u>, 168 Wn.2d 398, 414 (2010). "Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." <u>Smith v. Safeco Ins. Co.</u>, 150 Wn.2d 478, 485 (2003). As a rule, "an insurer has a duty of good faith to all of its policyholders, and to succeed on a bad faith claim, a policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." <u>Id.</u> at 484. Through both its unconscionable delay and its continuing failure to defend King County, Providence unreasonably breached its duty to defend and must be held liable in bad faith in accordance with Washington law.

    1.    <u>Providence Had a Duty to Render a Prompt Defense Determination to King County and it Breached this Duty in Bad Faith.</u>

Providence has a duty to render a prompt defense determination to its insureds, and it acted in bad faith by failing to make a defense determination in response to King County's tender. The provision of a defense is one of the main benefits of a liability policy, and "may

be of greater benefit to the insured than the indemnity." <u>Truck Ins. Exch. v. Vanport Homes, Inc.</u>, 147 Wn.2d 751, 765 (2002).  An "unconscionable delay in responding" to a tender of defense is bad faith.  <u>Id.</u> at 764.  The duty to defend is necessarily time sensitive; the insured goes without knowing whether it will receive the contracted-for benefit of a defense until the insurer makes its decision.  Accordingly, "[*t*]*he defense must be prompt and timely*" <u>Id.</u> at 765 (emphasis added).

Providence acted in bad faith when, without explanation, it failed to render a defense determination for 18 months after acknowledging receipt of the County's tender.  Bjorkman Decl. at ¶ 12.  An insurer's need to investigate claims is not reasonable justification for delay; an insurer must defend while it seeks additional information.  <u>See</u> <u>Truck</u>, 147 Wn.2d at 761; see also, <u>Expedia, Inc. v. Steadfast Ins. Co.</u>, 180 Wn. 2d 793, 805 (2014), as corrected (Aug. 6, 2014).  In <u>Truck Insurance Exchange v. Vanport Homes</u>, the Washington Supreme Court held an insurer acted in bad faith by waiting *over a year* to respond to a tender and then refusing to defend by providing a "laundry list" of exclusions as justification.  147 Wn.2d at 763.  Like the insurer in <u>Truck</u>, Providence failed to make a determination for over 18 months.  Bjorkman Decl. at ¶ 12.  This is quintessential insurer bad faith under Washington law.

        2.      <u>Providence Has a Duty to Defend King County Based on the Eight Corners of the Tender and it Breached this Duty in Bad Faith.</u>

Providence compounded its bad faith delay by failing to defend King County.  "The insurer's duty to defend is separate from, and substantially broader than, its duty to indemnify." <u>Nat'l Sur. Corp. v. Immunex Corp.</u>, 176 Wn. 2d 872, 878 (2013).  Unless the underlying suits are "clearly not covered" by the policy, Providence must defend.  <u>Truck</u>, 147

Wn.2d at 760.  If there is *any potential for coverage at all*, Washington law obligates

Providence to defend the County under a reservation of rights until a court rules on its

obligations under the policy in a declaratory judgment action.  <u>Expedia</u>, 180 Wn.2d at 803-04.

      "The duty to defend generally is determined from the 'eight corners' of the insurance

contract and the underlying complaint."  <u>Id.</u>  The insurer may look beyond the eight corners of

the suit and policy if coverage is unclear from the suit, or if the allegations in the suit conflict

with facts known to the insurer or are ambiguous.  <u>Id.</u>  However, "[t]hese extrinsic facts may

only be used to trigger the duty to defend; *the insurer may not rely on such facts to deny its*

*defense duty*."  <u>Id.</u> at 804 (emphasis added).  An insurer may not delay a decision on the duty

to defend in an effort to find evidence that will support a denial of defense.  <u>See Truck</u>, 147

Wn.2d at 761.  If it does, it impermissibly puts its own interests ahead of its insured's; an

insurer "must defend *until it is clear* that the claim is not covered."  <u>Am. Best Food</u>, 168

Wn.2d at 405 (emphasis added).

      By failing to make a defense determination for 18 months while in possession of all

necessary and relevant information (the eight corners of the suits and its policy), Providence

has demonstrated it cannot meet its heavy burden to prove that the tendered suits are "clearly

not covered."  Instead of making a prompt determination, Providence acknowledged tender

and requested additional information.  Bjorkman Decl. at ¶ 7-10.  When the County provided

all of the requested information, Providence did not use it to render a favorable defense

decision as three other carriers did and as the law in Washington requires.  Instead, it went

silent and left the County to fund its own defense.  <u>Id.</u> at ¶ 12.  Following the filing of this

case, rather than explain its delay, Providence answered with general denials to the Complaint

and filed its own belated coverage counterclaims seeking a determination of its obligation to

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 8
No. 14-cv-1957-MJP

defend or indemnify the County.  Answer at 13-14.  As discussed throughout this brief,

carriers cannot delay their defense determination to pursue coverage-based defenses.

Expedia, 180 Wn.2d at 805.  Providence's post-litigation behavior demonstrates (1) that

Providence cannot show the tendered claims are "clearly not covered" under the Policy, (2)

that its initial silence was not inadvertent, but a willful delay it has made no attempt to correct,

and (3) that Providence perpetuates its bad faith by refusing to defend under a reservation of

rights as it seeks a coverage determination with its counterclaim.  Providence breached its

duty to defend King County in bad faith.

> 3.    Providence's Breach of its Duty to Defend Was Unreasonable, Frivolous, and Unfounded and Providence Cannot Defend its Conduct.

To date, Providence has not attempted to explain its unconscionable delay or refusal to

defend the County.  At this juncture, any contractual or common law defense Providence may

raise with respect to its duty to defend or indemnify will not impact its liability for bad faith

delay and failure to defend.  Providence may argue, for example, that King County's delayed

tender for some of the suits somehow exonerates its bad faith, but such an argument is

contrary to the law in Washington and confuses a coverage defense with a defense to the tort

of bad faith.  Expedia, 180 Wn.2d 793, 804.  King County is not aware of any case in which

late tender is treated as a defense to the tort of bad faith, and as a coverage defense it requires

an insurer to prove it suffered actual and substantial prejudice.  Id. at 804.  An insurer must

still determine whether the suit tendered together with the policy language (eight corners) has

triggered its duty to defend even if it believes the facts will later show the necessary prejudice

from late tender.  Expedia, 180 Wn.2d 793, 804.  Unless the insurer can prove prejudice as a

matter of law, it is obligated to defend its insured while investigating whether the insured's

tender relieves it of its coverage obligation under the policy.  Id.  Where, as here, Providence

may raise late tender as a potential, but not substantiated defense, Providence must defend.

In Expedia, Inc. v. Steadfast Insurance Co., the Washington Supreme Court explicitly

declined a carrier's request for discovery on coverage defenses, including late tender, holding

that the lower Court first had to issue a ruling on whether the carrier's duty to defend was

triggered.  180 Wn.2d at 797.  After finding the trial court improperly conflated the duty to

defend with the duty to indemnify, the Court recognized that "[d]etermining whether the duty

to defend has been triggered is a separate inquiry from whether an insurer may be relieved of

its duty to defend or indemnify due to a defense *such as a claim of late tender by the insured*."

Id. at 804 (emphasis added).  If an insurer wishes to raise the defense of late tender, but

requires additional information to substantiate its prejudice from the late tender, then it *must*

*defend its insured while developing its defense of late tender.*  Id. at 805 ("an insurer's

allegations of prejudice cannot preclude a determination that the underlying claim is

conceivably covered.").

Like every liability insurer that receives a tender, Providence had three choices: (1)

accept defense, (2) deny a defense because the policy did not apply to the suit ("clearly not

covered"), or (3) engage in further investigation while defending the County under a

reservation of rights, and later file a declaratory judgment action.  See Truck, 147 Wn.2d at

760-61.  Providence did precisely what the law prohibits: it waited silently, did nothing, and

now seeks to litigate its coverage defenses without first providing a defense.

4. <u>King County Suffered Harm as a Result of Providence's Bad Faith.</u>

King County has suffered actual and substantial harm as a direct result of Providence's

bad faith breach of its duty to defend, and is additionally entitled to the presumption of harm

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 10
No. 14-cv-1957-MJP

that Washington courts impose on an insurer that has acted in bad faith.  "The rebuttable

presumption of harm must be applied because an insured should not be required to prove what

might have happened had the insurer not breached its duty to defend in bad faith; that

obligation rightfully belongs to the insurer who caused the breach."  Kirk v. Mt. Airy Ins. Co.,

134 Wn.2d 558, 563 (1998).  The insurer must overcome the "almost impossible burden" to

prove the negative: that its insured was not harmed by its bad faith.  Mutual of Enumclaw Ins.

Co. v. Dan Paulson Const., Inc., 161 Wn.2d 903, 921-22 (2007).  The presumption of harm is

so strong that Washington courts have found it is not rebutted even when the insured will face

no liability due to the settlement and assignment of the underlying claim.  Safeco Ins. Co. of

Am. v. Butler, 118 Wn. 2d 383, 396-97 (1992), see also, Dan Paulson, 161 Wn.2d at 923

(finding an insurer did not rebut the presumption of harm by showing the insured's claim

ultimately settled within the policy limits, noting "[i]t is impossible to predict what course the

[insured's] arbitration might have taken but for [the insurer's] bad faith.").

        The presumption of harm, which shifts the ordinary burden of proof, is grounded in

important public policy considerations. The Washington Supreme Court has recognized the

magnitude of the burden the presumption of harm places on insurers, but found it necessary in

light of the public policy goal of deterring insurer bad faith.  Dan Paulson, 161 Wn.2d at 921-

22.  An insurer's bad faith impacts the public interest and results in harm that may not be

readily apparent or tangible, including loss of the peace of mind insureds bargained and paid

for when they purchased their policy.  Immunex, 176 Wash. 2d at 878 ("Because security and

peace of mind are principal benefits of insurance, insurers must fulfill their contractual

obligations in good faith[.]").  Here, King County was denied the security it bargained for

when it purchased this insurance, and has had to shuffle budgets for two years while paying

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 11
No. 14-cv-1957-MJP

its own defense.  Bjorkman Decl. at ¶ 12.  The Court has the authority to correct the harm

caused by Providence's bad faith by granting King County's motion.

> ### C.      The County is Entitled to Coverage by Estoppel as a Remedy for Providence's Bad Faith.

Providence's bad faith failure to defend entitles King County to coverage by estoppel.

In Washington, "an insurer that refuses or fails to defend in bad faith is estopped from

denying coverage."  Truck, 147 Wn.2d at 759.  In Kirk v. Mt. Airy Insurance Co., the

Washington Supreme Court recognized that "bad faith requires us to set aside traditional rules

regarding harm and contract damages *because insurance contracts are different*."  134 Wn.2d

at 562 (emphasis added).  Noting the duty to defend is an important benefit of an insurance

contract, the Kirk Court assumed harm upon breach of the duty, held that the insurer should

be estopped from denying coverage, and emphasized that "[t]he insurer who in bad faith

refuses to acknowledge its broad duty to defend is no less liable than the insurer who accepts

the duty to defend under a reservation of rights, but then performs the duty in bad faith."  Id.

at 564.  Coverage by estoppel is appropriate even if there is no coverage under the insurance

contract because an insurer's obligation of good faith is independent of its contractual

obligations.  Coventry, 136 Wn.2d at 279-80.  As this Court has previously recognized, the

Washington Supreme Court has explicitly rejected the "no harm no foul" approach,

recognizing, instead, that the special insured-insurer relationship requires strong repercussions

for insurer bad faith.  Aecon Bldgs., Inc. v. Zurich N. Am., 572 F. Supp.2d 1227, 1234 (W.D.

Wash. 2008), citing Coventry, 136 Wn.2d at 279-80.

Providence's (1) unconscionable delay in making a defense determination and (2)

continuing failure to defend each constitute bad faith, and this bad faith harmed the County.

1
2
3
4
5
6
7

Providence's actions since the Complaint was filed continue to compound its bad faith delay: it continues to refuse to defend King County as it now seeks to delay the disposition of the County's bad faith claim by litigating its coverage defenses. Answer at 13-14. In accordance with Washington law, this Court should estopp Providence from raising any coverage defenses and should order Providence to defend and indemnify King County. It follows that Providence's coverage counterclaims must be dismissed as moot.

## II.    CONCLUSION

8
9
10
11
12
13
14
15
16
17
18
19
20
21

The benefit King County bargained for and paid for under the policy, a defense against underlying suits, has been turned into a burden: the County received no defense, *and* has been forced to litigate to receive the benefits it is owed. Nobody purchases liability insurance with the goal of paying their own defense when the carrier should be paying *and* incurring the additional burden of having to litigate for the benefits they are entitled to. Washington law recognizes as much. For the foregoing reasons, King County is entitled to Summary Judgment on its claim of bad faith failure to defend claim against Providence, and is entitled to the remedy of coverage by estoppel. Because coverage by estoppel moots Providence's coverage counterclaims, the counterclaims should be dismissed with prejudice. Plaintiff respectfully requests entry of summary judgment in its favor, specifying coverage by estoppel as the remedy, and dismissal of Providence's coverage counterclaims as moot.

22

Dated this 6th day of August, 2015.

23

K&L GATES LLP

24
25
26

By *s/Martha Rodriguez-Lopez*
   Martha Rodriguez-Lopez, WSBA #35466
   Attorney for Plaintiff King County

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 13
No. 14-cv-1957-MJP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

| Attorney for American Home Assurance Company: | Attorney for Providence Washington Insurance Company: |
|---|---|
| Jeffrey D. Laveson<br>Linda B. Clapham<br>Carney Badley Spellman, PS<br>701 Fifth Avenue, Suite 3600<br>Seattle, WA  98104-7010<br>Laveson@carneylaw.com<br>Clapham@carneylaw.com | David M. Schoeggl<br>Stephania Denton<br>David W. Howenstine<br>Lane Powell PC<br>1420 Fifth Avenue, Suite 4200<br>Seattle, WA  98111-9402<br>schoeggld@lanepowell.com<br>dentons@lanepowell.com<br>howenstined@lanepowell.com |
| Attorney for Hartford Accident and Indemnity Company: | Attorney for Travelers Indemnity Company and Aetna Casualty and Surety Company: |
| Carl E. Forsberg<br>Kenneth J. Cusack<br>Forsberg & Umlauf, P.S.<br>901 Fifth Avenue, Suite 1400<br>Seattle, WA  98164<br>cforsberg@forsberg-umlauf.com<br>kcusack@forsberg-umlauf.com | Everett W. Jack, Jr.<br>Mr. Steven P. Caplow<br>Davis Wright Tremaine LLP<br>1300 SW 5th Ave., Ste 2400<br>Portland, OR  97201-5682<br>everettjack@dwt.com<br>stevecaplow@dwt.com |

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 6th day of August, 2015

By *s/Kathy Jacobson*
Kathy Jacobson

KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT AGAINST
DEFENDANT PROVIDENCE  - 14
No. 14-cv-1957-MJP