UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KING COUNTY,

Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY, et al.,

Defendants.

CASE NO. C14-1957 MJP

ORDER ON MOTION TO BIFURCATE, STAY PROCEEDINGS AND RESERVE COVERAGE CLAIMS

The Court, having received and reviewed:

1. Plaintiff King County's Motion to Bifurcate, Stay Proceedings and Reservation of Coverage Claims (Dkt. No. 61);
2. Defendants' Joint Opposition to King County's Motion to Bifurcate, Stay Proceedings and Reservation of Coverage Claims (Dkt. No. 81);
3. Plaintiff King County's Reply in Support of King County's Motion to Bifurcate, Stay Proceedings and Reservation of Coverage Claims (Dkt. No. 89);

and all attached declarations and exhibits (and having heard oral argument), makes the following ruling:

IT IS ORDERED that the motion is DENIED.

**Background**

*Underlying Proceedings*

Plaintiff King County is involved in two pending underlying Superfund cleanup proceedings involving: (1) the Lower Duwamish Waterway Superfund Site ("LDW site") and (2) the East Waterway Sediments operable unit of the Harbor Island Superfund Site ("Harbor Island site"). (Dkt. No. 13 at 4–8.) With respect to the LDW site, Plaintiff was named as a potentially responsible party ("PRP") and a potentially liable party ("PLP") by the Environmental Protection Agency ("EPA") and Department of Ecology ("Ecology") in 2000; it later negotiated a mediation process involving other PRP/PLPs to allocate liability for remedial action costs. (Id. at 5.) The mediation proceedings—which commenced in April 2014 and are still ongoing — seek to allocate liability for contaminating the LDW site among 45 parties total. (Id.) Plaintiff alleges it has incurred and continues to incur defense costs in response to these allocation proceedings. (Id. at 6.)

Regarding the Harbor Island site, Plaintiff was named as a PRP in 2006 and subsequently entered into a cost-sharing agreement with the Port of Seattle, which signed an Administrative Order on Consent with the EPA. (Dkt. No. 13 at 7.) Plaintiff alleges it has incurred and continues to incur defense costs in response to this proceeding. (Id. at 8.)

Plaintiff also seeks to recover defense costs for two other underlying suits that are now resolved. In City of Seattle v. The Boeing Company, an action involving the Slip 4 Early Action Area ("Slip 4") of the LDW site, Plaintiff alleges it has resolved the claims of Boeing and the

City of Seattle, but only partially resolved the claims of the EPA and Ecology. (Dkt. No. 13 at 6.) In City of Seattle v. Malarkey Asphalt Company, an action involving the T-117 EAA of the LDW site, Plaintiff's complaint alleges it has resolved the claims of Malarkey and the Port of Seattle. (Id. at 7.)

*Pending Bad Faith Litigation*

Plaintiff filed its complaint on December 23, 2014, asserting a bad faith claim against Defendants Travelers Indemnity Company, et al., for failure to accept the tender of defense, to accept the tender of defense under a reservation of rights, and/or to timely defend Plaintiff in any one or all of the underlying actions discussed *supra*. (Dkt. No. 13 at 10.) Defendants counterclaimed for declaratory relief under their contracts, denying coverage and a duty to defend. (Dkt. Nos. 29, 45, 46.) Defendant Travelers filed a third party complaint against thirteen additional carriers. (Dkt. No. 46.)

Plaintiff now moves to bifurcate discovery and trial related to its bad faith claims from Defendants' coverage claims, cross-claims, third party claims, and coverage defenses on the grounds that Plaintiff's claim presents a separate, potentially dispositive preliminary issue, and that bifurcation would promote judicial economy and prevent prejudice. (Dkt. No. 61 at 7–13.) Plaintiff also requests that the Court stay all proceedings on Defendants' claims until Plaintiff's underlying litigation is resolved, and reserve Plaintiff's contractual coverage claims against Defendants. (Id. at 2–3.)

## **Discussion**

I. Bifurcate Discovery and Trial

A. Legal Standard

Federal Rule 42(b) allows district courts to bifurcate claims based on judicial economy, prejudice, and convenience. The decision to bifurcate proceedings is within the sound discretion

of the district court. See Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004).

With respect to both discovery and trial, the moving party has the burden of proving that bifurcation will promote judicial economy, prevent prejudice to the parties, or avoid inconvenience. Spectra–Physics Lasers, Inc. v. Uniphase Corp., 144 F.R.D. 99, 101 (N.D. Cal. 1992). Bifurcation is inappropriate when the issues are so intertwined that separating them would create confusion to the trier of fact. Miller v. Fairchild Industries, Inc., 885 F.2d 498, 511 (9th Cir. 1989).

B.   Dispositive Preliminary Issue

Plaintiff argues that bifurcation of discovery and trial is appropriate because resolution of the bad faith claim in its favor will moot Defendants' counterclaims, third party claims, and affirmative defenses. (Dkt. No. 61 at 7.) According to Plaintiff, its bad faith claim is distinct from Defendants' coverage claims and factually limited to Defendants' failure to timely accept tender of defense; it can therefore be resolved as a matter of law in summary judgment. (Id. at 11–12.) Having read the briefing on both sides and heard oral argument on this issue, the Court is far from convinced that there are no disputed issues of material fact concerning the bad faith claims and that this portion of this case will be resolved quickly on the legal merits alone.

Plaintiff's bad faith claim undoubtedly presents a separate legal issue from Defendants' coverage claims and defenses. Nevertheless, the parties have raised multiple issues of material fact, including whether: (1) Defendants reasonably responded to Plaintiff's tender letter (see Dkt. No. 81 at 4–6; Dkt. No. 61 at 4–5; Dkt. No. 13 at 8–10), (2) Defendants agreed to timely investigate Plaintiff's claims (see Dkt. No. 81 at 5; Dkt. No. 61 at 4–5; Dkt. No. 13 at 10), and (3) Plaintiff provided adequate information to Defendants to investigate and defend Plaintiff's

claims (see Dkt. No. 81 at 5, 7; Dkt. No. 90 at 1, 15–20). Thus, it is doubtful that this Court can find—as a matter of law—that Defendants failed to investigate or defend Plaintiff's underlying claims in good faith and thereby dispose of Defendants' coverage claims by estopping their denial of coverage. Defendants allege that their claims are fact intensive and will require extensive written and deposition discovery, motion practice, expert testimony, and trial (Dkt. No. 81 at 13); the Court is inclined to agree.

Thus, even if this claim were ultimately resolved in Plaintiff's favor, it is questionable if bifurcating it will promote judicial economy. Additionally, the Court has other concerns regarding the likelihood of cost and time savings to either the Court or the parties.

C. Judicial Economy

Plaintiff argues that bifurcating discovery and trial will promote judicial economy because Plaintiff's bad faith claim presents a separate, potentially dispositive preliminary issue. (Dkt. No. 61 at 7.)

This Court has previously denied the bifurcation of bad faith claims and contractual coverage claims on judicial economy grounds. See Van Wijk v. Western Nat. Assur. Co., 2011 WL 1771878, at *1 (W.D. Wash. 2011)("It would be . . . time-consuming for the Court if two separate discovery periods and trials were required on intertwined factual issues.")

The Court finds that, in this case, bifurcating discovery and (most likely) trial on the bad faith claim alone will not promote judicial economy. If Plaintiff does not prevail on its bad faith claim, bifurcation will result in two separate trials and added costs to the Court in jurors, court time, and personnel; and to the parties in pretrial discovery, motion practice and litigation.

Further, the Court questions whether it is even be feasible to separate bad faith discovery from coverage discovery. (See Dkt. No. 81 at 13.) Defendants presented multiple examples of

overlap between the discovery Defendants will seek to conduct and the discovery Plaintiff wants stayed. (See id. at 9–10 n.5.) While bad faith and coverage claims constitute two separate legal issues, such cases often present intertwined factual issues. See Van Wijk, 2011 WL 1771878, at *1.

At the very least, even if the claims were bifurcated, the Court can easily foresee a lengthy cycle of discovery disputes as the parties contest which evidence sought by Defendants is applicable to which claims, further undercutting Plaintiff's "judicial economy" argument. Plaintiff argues that the facts and legal arguments concerning the bad faith and coverage claims are unrelated, but the Court agrees with Defendants: if that were the case, why is Plaintiff attempting to reserve the coverage claims for a later proceeding? It does not appear that judicial economy would be served by granting Plaintiff's motion.

D. Prejudice

Plaintiff also argues that litigating contractual coverage issues now will prejudice its defense of the underlying claims because the facts relevant to both suits are substantially similar. (Dkt. No. 61 at 9–10.) The overlapping factual issues include Plaintiff's culpability with respect to the contamination, its ownership of the contaminated facility, and its undue delay in tendering defense. (Id. at 10–11.) According to Plaintiff, the risk of prejudice will force Plaintiff to risk its defenses to the underlying suits or abandon its bad faith claim unless bifurcation is granted. (Id. at 10.)

A number of factors mitigate against Plaintiff's position concerning prejudice. First, the Court is reluctant to rule that Plaintiff may pursue a claim against its insurers while denying those defendants the discovery which may be required to adequately defend themselves. This is not a case where the insurance companies brought suit against their insured for a declaratory

judgment, thus forcing their client's hand while underlying litigation was ongoing. Plaintiff, the insured, chose to file its claims at this juncture, and the Court is hard-pressed to believe that King County did not know that in so doing it would force its insurance companies to seek discovery on the very issues it is now attempting to foreclose through this motion.

Second, Plaintiff has failed to provide the level of evidentiary and procedural detail regarding the underlying litigation which might persuade this Court of its position. The Malarkey and Boeing cases have already been settled, so failing to bifurcate as to those cases could not create active interference in an ongoing proceeding. As for the remaining underlying matters, Plaintiff has simply not supplied the Court with enough information regarding the status of those proceedings (e.g., whether discovery is ongoing or concluded) to carry its burden of demonstrating that the requisite prejudice would result from moving forward with both the bad faith and coverage claims in this litigation.

Finally, Plaintiff has failed to show in what fashion it would be prejudiced by possibly being required to produce evidence in this litigation that is relevant to the issues in its underlying actions. King County does not establish (if it is indeed the case) that providing discovery to Defendants in this case would force it to take positions inconsistent with its position in the allocation proceedings. Nor does Plaintiff allege that the parties in the underlying proceedings lack either knowledge of or access to any information that Defendants might request in discovery here. Indeed, it appears that the enforcement actions which Plaintiff seeks to preserve unprejudiced have been ongoing for over a year; it strains credulity to imagine that, in that period of time, the army of attorneys representing (by Plaintiff's account) 45 parties has not sought out every shred of evidence that Defendants could possibly seek in this lawsuit. At the very least,

Plaintiff has presented no evidence which would tend to establish that fact. King County has not satisfied its burden of proof on the issue of prejudice.

II. Stay of Proceedings

Plaintiff also moves to stay all proceedings on Defendants' counterclaims and third party claims until the underlying proceedings for environmental cleanup against Plaintiff is resolved. (Dkt. 61 at 2.)

A district court has the inherent power to stay its proceedings. This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. Landis v. North American Co., 299 U.S. 248, 254 (1936). When considering a motion to stay, the court weighs a series of competing interests: (1) the possible damage that may result from the granting of the stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and (4) questions of law which could be expected to result from a stay. CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).

As discussed *supra*, Plaintiff has not made the required showing that it will suffer hardship in the underlying proceedings if the stay is denied. In view of the seemingly intertwined nature of the facts as regards the bad faith and coverage claims, it cannot be said that the complications which would arise from attempting to sort out "stayed" from "unstayed" discovery issues would in any manner promote "the orderly course of justice." See Cook v. United Auto. Ass'n., 169 F.R.D 359, 362 (D. Nev. 1996); and Van Wijk, 2011 WL 1771878, at

*1. The Court will not stay the proceedings on Defendants' counterclaims and third party claims pending conclusion of the underlying environmental proceedings.

III. Reservation of Plaintiff's Coverage Claims

Plaintiff requests the Court expressly order that Plaintiff may reserve its potential coverage claims in order to remove the potential for a claim splitting dispute in future coverage litigation. (Dkt. No. 61 at 13.) At the outset, the Court believes that the rulings on the requests for bifurcation and a stay tend to obviate the need to reserve any claims Plaintiff may have in this litigation.

But, more to the point, Plaintiff has failed to establish that the federal rules of civil procedure even support such a request. In its briefing, Plaintiff cited a state court case which approved of the practice (Cummings v. Guardianship Svcs., 128 Wn.App. 742 (2005)) and a federal court case which merely acknowledged that a reservation of claims had occurred in an underlying state court proceeding (Dodd v. Hood River Cty., 59 F.3d 852 (9th Cir. 1995). But Plaintiff is in federal court pursuing federal claims and federal procedural rules apply.

Pressed at oral argument to provide support for this procedure at the federal court level, Plaintiff offered up Venuto v. Witco Corp., 117 F.3d 754 (3rd Cir. 1997). The case does nothing to support Plaintiff's position. While the appellate court ruled that a claim had in fact been preserved for a second legal action, the ruling was based on its finding that the district court judge "might have 'intended to permit the second action in light of the defendant's apparent support of a second action,' thus apparently preserving [Plaintiff's] claims for purposes of the entire controversy doctrine." Id. at 757-58. No such agreement exists in this case between the

parties and, in light of the rejection of the bifurcation and stay requests, the Court sees no utility or necessity in reserving any of Plaintiff's claims in this matter.

**Conclusion**

Plaintiff has failed to demonstrate that bifurcation will promote judicial economy or is the only means to avoid prejudice to its positions in the underlying proceedings, and its motion to bifurcate is DENIED. Having reached that conclusion, the Court sees no need to stay any portion of this matter, or to permit Plaintiff to reserve any claims it may have for later adjudication; accordingly, those motions are DENIED as well.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 14, 2015.

Marsha J. Pechman
United States District Judge