UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TRAVELERS INDEMNITY COMPANY, et al.,<br><br>　　　　　Defendants. | CASE NO. C14-1957 MJP<br><br>ORDER ON HARTFORD'S MOTION FOR SUMMARY JUDGMENT RE: BAD FAITH CLAIMS |

　　　　The Court, having received and reviewed:

　　　　1. Defendant Hartford Accident & Indemnity Company's Motion for Summary Judgment Regarding Bad Faith Claims (Dkt. No. 123),

　　　　2. King County's Opposition to Hartford's Motion (Dkt. No. 133),

　　　　3. Defendant Hartford Accident & Indemnity Company's Reply in Support of Its Motion for Summary Judgment (Dkt. No. 134)

and all attached declarations and exhibits, and having heard oral argument, makes the following ruling:

IT IS ORDERED that the motion is DENIED.

**Background**

Plaintiff King County alleges that it has incurred defense and indemnity costs related to claims asserted against it by the Environmental Protection Agency and others regarding the cleanup of several sites in the Duwamish water basin.

Defendant Hartford Accident and Indemnity Company ("Hartford") issued a policy ("the Policy") to King County which covered the insured from May 1, 1976 to April 1, 1977. The Policy was in excess to a $500,000 primary policy issued by Commercial Standard Insurance Company ("Commercial Standard") which ran from April 1, 1976 to April 1, 1977. Commercial Standard became insolvent in 1985.[1]

Hartford's Policy provides coverage under the following terms:

> The Company will indemnify [King County] for "ultimate net loss" in excess of the "underlying limit" or the "self-insured retention," whichever is the greater…
> * * *
> The Company will defend any claim or suit against the insured seeking damages on account of injury or damage to which this policy applies and which no underlying insurer is obligated to defend, but may make such investigation, defense and settlement thereof as it deems expedient…

Pltf Ex. 1, §§ I and II, at 001731.

King County first notified Hartford in a July 19, 2013 letter in which it tendered defense and indemnity claims relating to two sites at issue in the cleanup litigation. (Pltf Ex. 2.) Hartford acknowledged the tender on August 9, 2013 (Pltf Ex. 3) and responded to the tender on January 14, 2014. (Pltf Ex. 4.) In its response, Hartford indicated that it had no information that

---

[1] While Hartford initially denied knowing that Commercial Standard had become insolvent, at some point during the briefing on this motion it found evidence that it had been informed of the insolvency.

its excess and umbrella policies had been activated by exhaustion of any applicable underlying policies.

**Analysis**

This case presents two aspects of potential "bad faith" – the duty to indemnify and the duty to defend. This order does not concern the duty to indemnify. In its response brief, Plaintiff makes clear that

> King County, however is not arguing that Hartford must "drop down" and indemnify. King County is complaining that Hartford is not defending the County.

Pltf Response at 14. The County's argument centers around whether Hartford's refusal to defend was an act of bad faith. Defendant fails to establish as a matter of law that this was not the case and is not entitled to summary judgment to that effect.

Defendant claims, by the terms of the Policy, that it is not obligated to defend in this situation. It bases this assertion on several claims which it fails to substantiate. First, it points to Condition 8 of the Policy ("Other Insurance"), which provides:

> The insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance… available to the **insured**, whether or not described in the Schedule of Underlying Insurance Policies, and applicable to any part of the **ultimate net loss**, whether such other insurance is stated to be primary, contributing, excess or contingent; provided that if such other insurance provides indemnity only in excess of a stated amount of liability per **occurrence**, the insurance afforded by this policy shall contribute therewith with respect to such part of **ultimate net loss** as is covered hereunder, but the Company shall not be liable for a greater proportion of such loss than the amount which should have been payable under this policy bears to the sum of said amount and the amounts which would have been payable under each other excess indemnity policy applicable to such loss, had each such policy been the only policy applicable.

Pltf Ex. 1, Conditions at 001740 (**bold** in original).

ORDER ON HARTFORD'S MOTION FOR
SUMMARY JUDGMENT RE: BAD FAITH
CLAIMS- 3

This fails to persuade.  First and foremost, this provision clearly pertains to the insurer's duty to indemnify, as exemplified by the language "if such other insurance provides *indemnity* only in excess of a stated amount of liability per occurrence, *the insurance afforded by this policy shall contribute therewith with respect to such part of ultimate net loss* as is covered hereunder…" (emphasis supplied).  It says nothing about Defendant's duty to defend. Defendant asserts that "such 'other insurance' clauses are enforceable in Washington" without saying what they are enforceable for.   In fact, the case it cites in support of that position states, as regards the duty to defend,

> The insured should not be left without a prompt and proper defense and if a primary insurer fails to assume the defense, *for any reason*, the secondary insurer which has a duty to defend should provide the defense and, to do justice, should be entitled to recoup its costs from the primary insurer.

New Hampshire Indemnity Co. v. Budget Rent-A-Car Systems, Inc., 148 Wn.2d 929, 938 (2003)(*citing* 7C Appleman on Insurance Law & Practice, § 4682, at 33, 35 (Berdal ed. 1979))(emphasis supplied).

Plaintiff cites a persuasive California case analyzing a similar insurance contract "Other Insurance" provision. The analysis of the California court seems equally applicable here.  First, in speaking in terms of "[t]he insurance afforded by this policy" and "the insurance afforded by this policy shall contribute," the provision, by its language, defines how coverage will be applied (i.e., presumes that coverage exists) not *whether* it exists.  "This language expressly conditions the obligation to make [payments]; it does not by its terms or impliedly, condition either the existence of coverage or the duty to defend."  Travelers Cas. and Surety Co. v. Transcontinental Ins. Co., 122 Cal.App. 4th 949, 957 (2004).

Second, the location of the "Other Insurance" section in the "Conditions" section of the policy places it among a series of provisions ("Inspection and Audit," "Assistance and

ORDER ON HARTFORD'S MOTION FOR
SUMMARY JUDGMENT RE: BAD FAITH
CLAIMS- 4

1  Cooperation of the Insured," "Appeals," "Subrogation") which "set forth rights, obligations and

2  interpretative aids 'applicable to' coverage under the policy rather than conditions that must be

3  fulfilled prior to the existence of coverage." (Id.)

4      In its opening brief, Defendant also argued that Plaintiff was obligated to avail itself of the

5  statutory coverage available through the Washington Insurance Guaranty Association (WIGA);

6  *see* the WIGA Act, RCW 48.32.010 *et seq.* ("…WIGA steps in whether there is a claim against

7  a policyholder of an insolvent insurance company." WIGA v. Guaranty Nat'l Ins. Co., 685

8  F.Supp.1160, 1163 (W.D. Wa, 1988).)  But, as Plaintiff points out, WIGA has no duty to defend

9  in this situation; by statute, the association does not step up to cover claims arising after the

10 closing of a receivership.  *See* RCW 48.32.030(4)(a) ("'covered claim' does not include any

11 claim filed with the association subsequent to the final date set by the court for the filing of

12 claims against the liquidator or receiver of an insolvent insurer").  In this case, the receivership

13 was closed before any of the claims at issue here were filed.  Decl. of Bjorkman, ¶ 5.

14     Defendant argues that Plaintiff misreads the WIGA case, and claims that the U.S. District

15 Court held that, even in the face of an insolvent primary insurer, an excess carrier has no

16 obligation to "drop down" to indemnify or defend until the damages exceed the limits of the

17 primary policy.  Hartford asserts that this holding was intended to apply independent of the

18 WIGA statute (i.e., whether or not WIGA participation was required). (Reply at 4.)

19     The Court does not find the WIGA decision to be a model of clarity.  As Defendant does on

20 occasion here, the WIGA court tends to conflate the duty to indemnify and the duty to defend.

21 The WIGA court finds very definitively that the excess insurer should not have to "drop down"

22 to indemnify in place of an insolvent primary, but then inserts language (with no corresponding

23 analysis) suggesting that the same applies to the duty to defend.

24

ORDER ON HARTFORD'S MOTION FOR
SUMMARY JUDGMENT RE: BAD FAITH
CLAIMS- 5

However, there are two aspects of the decision which favor Plaintiff's interpretation over Defendant's. First, the decision cannot be read independently of the WIGA Act; i.e., the holding assumes WIGA is in the picture and the opinion cannot be read independently of that fact.[2] WIGA's <u>un</u>availability in this case renders the opinion of limited or no application here.

Second, to the extent that the case is relevant to this matter, it contains language which undercuts Defendant's position. In *dicta* which actually describe the facts before this Court, the <u>WIGA</u> court said:

> Furthermore, if there were no association like WIGA to assume the duties and obligations of the insolvent insurer, [Defendant] would naturally want to be able to defend the insured, because it would be in its interest to prevent a default or to defend the case to its satisfaction.

<u>WIGA</u>, *supra* at 1165. While this stops short of saying that the excess carrier is <u>obligated</u> to "drop down" and defend in the absence of a solvent primary insurer or WIGA, it certainly suggests that such an action would be appropriate. The Court also notes that, in the final analysis, <u>WIGA</u> is simply another District Court opinion (and thus of persuasive value at most).

Throughout its briefing, Defendant attempts to define the issue in terms of whether the underlying coverage had been "exhausted." While this is understandable (the "exhaustion" cases tend to focus on the duty to indemnify and consider the term "exhaustion" to mean "exhaustion by payment of claims"), it completely sidesteps the meaning of its contract term "damage… which no underlying insurer is obligated to defend" and whether that term includes an underlying insurer who is unavailable to defend by virtue of insolvency.

---

[2] "[T]he WIGA act [*sic*] and public policy require WIGA to step in as primary carrier… *thereby* relieving [Def], the excess carrier, of any duty to defend or indemnify until or unless the damages or judgment exceed the limits of the primary policy of the insolvent carrier." <u>WIGA,</u> *supra* at 1165 (emphasis supplied). In other words, it is WIGA stepping in which relieves the excess carrier of any duty.

ORDER ON HARTFORD'S MOTION FOR
SUMMARY JUDGMENT RE: BAD FAITH
CLAIMS- 6

1   This issue has never been addressed in Washington (or in any other state).  The fact is
2   that neither party cites a case on point in support of its position regarding the issue.  The term
3   appears to be undefined in both the policy and case law, and two factors mitigate in Plaintiff's
4   favor under those circumstances.

5   First, undefined terms in an insurance policy must be given their plain, ordinary meaning.
6   Boeing Co. v. Aetna Cas. & Surety Co., 113 Wn.2d, 869-877 (1990).  Plaintiff argues
7   convincingly that, once it became insolvent, the primary carrier could no longer be considered as
8   "obligated" to defend or indemnify its insured.  Defendant argued to the contrary at oral
9   argument – essentially, that even following bankruptcy Commercial Standard was still
10  "obligated" to defend their insured and their inability (in perpetuity) to do that meant that
11  Defendant's obligations were never triggered – but it cited no case law in support of that position
12  and the Court finds no support in logic or equity for that position, either.  As a matter of law,
13  Defendant has failed to persuade that there was another insurer "obligated" to defend Pltf under
14  these facts.

15  Second, to the extent that the "obligated to defend" term could be considered ambiguous,
16  the Court must adopt the interpretation that is most favorable to the insured.  Federal Ins. Co. v.
17  Scarsella Bros., Inc., 931 F.2d 599, 604 (9th Cir. 1991) (*citing* Transcontinental Ins. Co. v.
18  Washington PUD Utility Sys., 111 Wn.2d 452, 457 (1988)).  Unquestionably, that interpretation
19  would include a finding that "damage… which no underlying insurer is obligated to defend"
20  includes the situation where the underlying insurer is unavailable due to insolvency.

21  The Court finds that the law favors Plaintiff as regards the duty to defend.  "[I]f there is
22  any reasonable interpretation of the facts or the law that could result in coverage, the insurer
23  must defend." American Best Food v. Alea London Ltd., 168 Wn.2d 398, 413 (2010).

24

ORDER ON HARTFORD'S MOTION FOR
SUMMARY JUDGMENT RE: BAD FAITH
CLAIMS- 7

Furthermore, the failure to defend can result in bad faith liability even if it is ultimately determined that there is no coverage. <u>Kirk v. Mt. Airy Ins. Co.</u>, 134 Wn.2d 558, 563-64 (1998). The Court takes notice that Defendant had other options than refusing to defend – if it believed that the claim was not covered, it could have defended under a reservation of rights and sought a judicial determination of its obligation without leaving the County to fend for itself.

Defendant also seeks summary judgment dismissing Plaintiff's bad faith claim against it for failure to investigate. The Court's analysis *supra* concerning the duty to defend applies with equal force to Defendant's duty to investigate. If the insurer is not entitled to dismissal of the bad faith claims on its failure to defend, it is not entitled to a different result concerning its duty to investigate.

**Conclusion**

Defendant fails to establish, as a matter of law, that it is entitled to dismissal of the bad faith claims which King County has brought against it. Defendant's motion for summary judgment is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated: January 29, 2016.

_____
Marsha J. Pechman
United States District Judge

ORDER ON HARTFORD'S MOTION FOR
SUMMARY JUDGMENT RE: BAD FAITH
CLAIMS- 8