# EXHIBIT H

**ALTERNATIVE DISPUTE RESOLUTION MEMORANDUM OF AGREEMENT**

THIS ALTERNATIVE DISPUTE RESOLUTION MEMORANDUM OF AGREEMENT ("MOA") is made and entered into by and among the parties that sign the MOA ("Participating Parties"). This MOA shall take effect once it has been signed by at least twenty-five (25) Participating Parties.

**RECITALS**

WHEREAS, the United States Environmental Protection Agency ("EPA"), pursuant to its authority under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*, ("CERCLA"), has required the completion of a Remedial Investigation/Feasibility Study ("RI/FS") for the Lower Duwamish Waterway Site, CERCLIS ID No. WA0002329803 (the "Site");

WHEREAS, the City of Seattle, the Port of Seattle, King County, and The Boeing Company (hereafter, the "LDWG Members") have completed an RI/FS for the Site;

WHEREAS, EPA will issue a Record of Decision ("ROD") detailing the remedial action to be required for the Site, which the Participating Parties anticipate will include only actions to address contamination within the Lower Duwamish Waterway and not actions to address contamination in upland areas or the control of current upland sources of contamination to the Waterway;

WHEREAS, the Participating Parties wish to allocate one hundred percent (100%) of (1) costs incurred to implement the Administrative Order on Consent for Remedial Investigation and Feasibility Study ("AOC"); (2) costs incurred to perform work required by EPA or the Washington Department of Ecology ("Ecology") between completion of the Feasibility Study and issuance of the Consent Decree for the Site; and (3) costs to perform actions required under the Site ROD or Consent Decree, provided that the Allocator determines that such costs would be recoverable under CERCLA or the Model Toxics Control Act ("MTCA"), and subject to certain exceptions as further described in this MOA;

WHEREAS, the Participating Parties also wish to provide the option for parties involved with Early Action Areas ("EAAs") to avoid litigation by engaging in a parallel process to allocate past and future costs that would be recoverable under CERCLA or MTCA related to the remediation of EAAs, unless any Participating Party involved at individual EAAs does not wish to do so pursuant to this MOA; and

WHEREAS, the Participating Parties are committed to a fair and reasonable Allocation Process;

NOW, THEREFORE, in consideration of the terms of this MOA, the Participating Parties mutually agree and covenant as follows:

KC_Docs_001243

## AGREEMENT

1.    **Definitions.**

The definitions below will be used for the purposes of this MOA.

1.1   "Absent Parties" are PRPs that were not invited to participate in this allocation and did not become Participating Parties, but that have the capacity to be sued.

1.2   "All PRP Allocation" means an allocation in which the Allocator assigns one hundred percent (100%) of the Allocation Shares to Participating Parties, Absent Parties, Defunct Parties, and Recalcitrant Parties.

1.3   "Capacity to be sued" means having the legal status that is necessary to be sued.

1.4   "Claims Addressed in the Allocation Process" means (1) costs to implement the AOC; (2) costs incurred to perform work required by EPA or Ecology in preparation for the Lower Duwamish Waterway ROD or Consent Decree between completion of the Feasibility Study and issuance of the Consent Decree for the Site; and (3) costs to perform actions required under the Site ROD or Consent Decree, including costs incurred as a result of contamination spread from EAAs and including costs of monitoring to assess compliance with the ROD or Consent Decree; except that "Claims Addressed in the Allocation Process" shall not include (1) costs attributable to the cleanup or investigation of EAAs, regardless of whether such EAAs have been designated pursuant to Section 5.3.1; (2) costs for work required by NPDES permits or for compliance with regulatory programs other than CERCLA and MTCA; and (3) costs for investigations and cleanups performed under MTCA not related to implementing the Lower Duwamish Waterway AOC, ROD or Consent Decree.  Any ambiguity or disagreement regarding the scope of "Claims Addressed in the Allocation Process" shall be resolved by the Allocator.

1.5   "Defunct Parties" are PRPs that are not participating in the Allocation Process and that lack the capacity to be sued.

1.6   "Document Repository" means the database described in Section 5.2.

1.7   "Early Action Area" means one of the following five Early Action Areas identified in EPA's Proposed Plan:  Norfolk CSO, Duwamish/Diagonal CSO/SD, Slip 4, Terminal 117, or Boeing Plant 2/Jorgensen Forge.

1.8   "Final Allocation" has the meaning given in Section 5.9.4.

1.9   "Final Agreed Allocation Summary" is the document developed to summarize Final Mediation Shares as the result of any mediation held pursuant to Section 6.

1.10  "Allocation Share" means a percentage of one hundred percent (100%) of all Claims Addressed in the Allocation Process that the Allocator determines are recoverable under CERCLA or MTCA and that the Allocator assigns in the Final Allocation.

KC_Docs_001244

1.10.1  "All PRP Share" means the percentage of one hundred percent (100%) of all Claims Addressed in the Allocation Process that the Allocator determines are recoverable under CERCLA or MTCA and that the Allocator assigns to any Participating Party, Absent Party, Defunct Party, or Recalcitrant Party in the Final Allocation.

1.10.2  "Participating Party Equitable Share" means the percentage of one hundred percent (100%) of all Claims Addressed in the Allocation Process that the Allocator determines are recoverable under CERCLA or MTCA and that the Allocator assigns to a Participating Party in the Final Allocation, which percentage includes a reassignment of Allocation Shares from Absent, Defunct, and Recalcitrant Parties to Participating Parties, considering all applicable legal and equitable factors under CERCLA or MTCA and any other applicable law or legal principle that, in the judgment of the Allocator, would be considered by a court in apportioning or allocating liability and costs for the Site.

1.11  "Final Mediation Share" means the Allocation Shares as modified by mediation pursuant to Section 6 and as reflected in a Final Agreed Allocation Summary.

1.12  "Participating Party" means a PRP that signs this MOA and has not withdrawn or been expelled from participation in the Allocation Process.

1.13  "PRP" means a Potentially Responsible Party.

1.14  "Participating Party Allocation" means an allocation in which the Allocator reassigns the Allocation Shares of Absent, Defunct, and Recalcitrant Parties as determined in the All PRP Allocation to the Participating Parties as the Allocator deems equitable after applying factors that, in the judgment of the Allocator, would be considered by a court.

1.15  "Preliminary Allocation" has the meaning given in Section 5.9.1.

1.16  "Recalcitrant Parties" are PRPs that were invited but declined to participate in the Allocation Process or participated but then withdrew or were expelled from the Allocation Process prior to the Final Allocation, and that have the capacity to be sued.

1.17  "Shared Costs" has the meaning given in Section 11.1.

1.18  "Steering Committee" means the group established pursuant to Section 10.1 or a person designated by that group.

1.19  "Writing" and "written" include email communications.

## 2.    Preliminary Matters.

2.1  Status of Recitals.  The recitals set forth above are adopted and incorporated into this MOA as terms and conditions.

2.2  Voting Prior to the Final Allocation.  Prior to the Allocator's issuance of the Final Allocation, each Participating Party shall have one vote.  A decision to be made by a "majority" prior to the Final Allocation means that more than fifty percent (50%) of the Participating Parties

KC_Docs_001245

that vote on the issue vote the same way. A decision to be made by two-thirds means that two-thirds or more of the Participating Parties that vote on the issue vote the same way. Participating Parties that abstain or otherwise fail to vote are not counted in computing a majority or two-thirds.

2.3   <u>Voting Following the Final Allocation</u>. Once the Allocator has issued the Final Allocation, each Participating Party will have a weighted vote equal to the Participating Party Equitable Share assigned by the Allocator. For example, a Participating Party assigned a fifty-five percent (55%) Participating Party Equitable Share by the Allocator will have fifty-five (55) votes and a Participating Party assigned a two percent (2%) Participating Party Equitable Share will have two (2) votes. Parties may not split their votes. A decision to be made by a "majority" following the Final Allocation means that more than fifty percent (50%) of the total votes cast on an issue vote the same way. A decision to be made by seventy-five percent (75%) following the Final Allocation means that seventy-five percent (75%) or more of the total votes cast on an issue vote the same way.

2.4   <u>Voting Procedures</u>.

2.4.1   <u>Proxies</u>. A Participating Party may appoint another party or person to cast a vote on its behalf. A proxy may be appointed for a particular vote or on an ongoing basis. The appointment must be in writing delivered to the Steering Committee. More than one party may appoint the same proxy.

2.4.2   <u>Votes by Email or Other Writing</u>. The usual method for votes by the Participating Parties will be for the Steering Committee to send a notice by email of the issue to be voted on. The notice will include a deadline for votes to be sent back. The votes received by the Steering Committee by the deadline will be tallied to determine the outcome. The Steering Committee may agree to accept a vote provided by a different written method, such as facsimile, upon request of a Participating Party.

2.4.3   <u>Notice of Votes</u>. The Steering Committee will notify the Participating Parties of issues to be voted on by sending an email to the electronic address(es) designated by each Participating Party. Notice will be sent at least five (5) full business days prior to the deadline for voting unless extraordinary circumstances make such notice impractical. In no case shall notice be provided less than 48 hours prior to the deadline for voting. The Steering Committee will utilize a tool that notifies the sender of the email when the email has been delivered. If the Steering Committee does not receive notice that the email has been delivered successfully, the Steering Committee will endeavor to contact the Participating Party by telephone to resolve the problem. In all other cases, the emails will be deemed to have been successfully delivered. It is the responsibility of each Participating Party to provide the Steering Committee with correct email addresses, to assign someone to check the email address(es) provided, and to set SPAM filters and security software to allow delivery of emails from the Steering Committee.

2.4.4   <u>Meetings</u>. The Steering Committee has discretion to call for a meeting in person or by a telephonic or electronic conference of the Participating Parties when discussion is warranted. Notice of such meetings will be provided by email as described in Section 2.4.3 for

80   KC_Docs_001246

votes by email. When the Steering Committee calls for the Participating Parties to meet in person, a Participating Party may ask to participate by phone or electronic means (such as video conference or live chat) and the Steering Committee will accommodate all such reasonable requests. Usually, the Steering Committee will call for a vote by email following the meeting on issues discussed during the meeting rather than having the Participating Parties vote during the meeting. However, if prior notice of the vote has been given in conformity with Section 2.4.3, the Steering Committee has discretion to allow a vote by the Participating Parties during the meeting. Votes taken during a meeting shall only be cast by Participating Parties that are participating in the meeting or have an authorized proxy participating in the meeting.

**3.     Participating Parties.**

3.1   <u>Participating Party Decisions</u>. The Participating Parties will endeavor to make decisions among themselves concerning the implementation of this MOA by consensus. If they are unable to do so, and except as expressly stated otherwise in this MOA, they shall make decisions by a majority vote.

3.2   <u>Related Entities</u>. Under this MOA, Related Entities shall be counted as one Participating Party. "Entities" includes corporations, limited liability companies, trusts, partnerships, governmental entities, or any other form of business enterprise. The following shall be considered "Related Entities": (1) an individual or group of individuals and any Entities owned, controlled, managed, or governed, in whole or in part, by that individual or group of individuals, (2) a group of Entities that are owned, controlled, managed, or governed, in whole or in part, by the same individual(s) or Entity, (3) a parent corporation and its subsidiaries, and (4) departments, instrumentalities, and agencies of the United States. Defining parties as "Related Entities" is for administrative convenience only and shall have no effect on potential liability of the Entities or their parent/subsidiary companies.

3.3   <u>Funding</u>. Within sixty (60) days of the effective date of this MOA, the Steering Committee shall send a notice to each Participating Party of the initial amounts of costs to be paid by each Participating Party to cover anticipated Shared Costs for a specified period of time ("Advance Costs"). From time to time, the Steering Committee shall send additional notices to each Participating Party of additional Advance Costs to be paid by each Participating Party. The financial obligations of the governmental parties for allocation costs incurred beyond 2014 are contingent on their receiving budget authority from their respective legislative bodies. Each governmental party will request such budget authority and if it is not granted, the affected governmental party will promptly notify the other parties and will withdraw from this MOA and the Allocation Process.

3.4   <u>Participation by Other PRPs</u>.

3.4.1   <u>Proposing Other PRPs</u>. Any Participating Party may propose that any number of additional PRPs be invited to participate in the allocation process established by this MOA (the "Allocation Process"), as long as the proposal is made by the deadline set forth in Exhibit A. For each additional PRP that is proposed to be invited, the Participating Party making the proposal must submit a written explanation, which may not exceed two (2) pages (single-spaced), demonstrating that (a) the proposed PRP is reasonably believed to have a likely share of

- 5 -

KC_Docs_001247

liability such that the proposed PRP is an appropriate Participating Party, (b) the proposed PRP is reasonably believed to be financially viable, and (c) the proposed PRP has the capacity to be sued.

    3.4.2   Approval of Proposed PRPs.

        3.4.2.1   Selection of Proposed PRPs.  Subject to the limits of Section 3.4.2.2 herein, by the deadline set forth in Exhibit A, proposed PRPs that meet the criteria set forth in Section 3.4.1 will be invited to join the Allocation Process as Participating Parties so long as the invitation is approved by a three-fourths vote of the Participating Parties.

        3.4.2.2   More than 80 Participating Parties.  In the event that it is likely the total number of Participating Parties would exceed eighty (80) if all PRPs are invited that have been approved pursuant to Section 3.4.2.1, then the proposed PRPs will be ranked by the number of votes approving their invitations and a sufficient number of them will be invited in ranked order so that it is likely that the number of PRPs who agree to participate will approximate eighty (80).  The remaining proposed PRPs will only be invited if the Allocator approves inviting them upon a finding that they meet the criteria set forth in Section 3.4.1 and that adding them would advance a fair and equitable allocation without unduly increasing the costs of the Allocation Process.

        3.4.2.3   Agreeing to Participate.  The Steering Committee will send invitations to the additional approved PRPs and they will have until the deadline set forth in Exhibit A to agree to participate.

    3.4.3   Newly Discovered Evidence.  After the deadline established in Exhibit A, additional PRPs will only be invited to join the Allocation Process if the Allocator determines that (1) the invitation is based on newly discovered evidence that was not reasonably available at the time of the deadline, (2) the proposed PRP meets the criteria set forth in Section 3.4.1, and (3) adding the additional PRP would advance a fair and equitable allocation without unduly increasing the costs of the Allocation Process.

    3.4.4   Revised Deadlines.  For any additional PRPs that join the Allocation Process pursuant to this Section 3.4, the Allocator may, in his discretion, revise the deadlines set forth in Exhibit A for the submission of materials in order to give them a fair opportunity to participate while keeping the Allocation Process on schedule.

    3.4.5   New Participating Parties' Contributions.  PRPs that join as Participating Parties part way through the Allocation Process shall pay the per capita costs they would have paid had they joined at the beginning of the Allocation Process, plus their per capita share of costs going forward.

**4.**    **Allocator.**

    4.1   Allocator.  The Allocator shall be John Barkett.

    4.2   Allocator Contract Administration.  The City of Seattle will execute the contract with the Allocator and will administer the contract at no cost to the other Participating Parties for

KC_Docs_001248

administration. The City of Seattle will pay the Allocator according to the terms of the Allocator's contract.

4.3   Impartial Neutral.

4.3.1   No Conflict of Interest for Unrelated Matters. The Participating Parties acknowledge that John Barkett is performing services under this MOA as an impartial neutral. The Participating Parties acknowledge and agree that neither John Barkett nor Shook, Hardy & Bacon L.L.P. are representing or acting as counsel or a consultant for any individual Participating Party in the Allocation Process or the Lower Duwamish Superfund Site matter, nor will they do so. Nothing in this MOA prohibits Shook, Hardy & Bacon L.L.P. from representing any Participating Party or being adverse to any Participating Party in any matter not related to the Site. Neither John Barkett's role nor that of any member or employee of Shook, Hardy & Bacon L.L.P. will be raised by any of the Participating Parties as a conflict of interest or basis for disqualification of John Barkett or Shook, Hardy & Bacon L.L.P. in any matter not related to the Site.

4.3.2   Ethical Screening Procedure. The Participating Parties acknowledge that Shook, Hardy & Bacon L.L.P. has in the past or currently represents one or more Participating Parties in matters unrelated to the Site. John Barkett has implemented the ethical screening procedures of Shook, Hardy & Bacon L.L.P. with respect to Participating Parties now represented by Shook, Hardy & Bacon L.L.P. in unrelated matters and he will be screened from any such matters, and from any future matters should other Participating Parties become clients of Shook, Hardy & Bacon L.L.P. in matters unrelated to the Site.

4.4   Ex Parte Contact.

4.4.1   Substantive Matters. Participating Parties may not initiate ex parte contact with the Allocator regarding any substantive matter. The Participating Parties may only initiate substantive communication with the Allocator in writing with copies provided to all the Participating Parties and to the Document Repository. The Allocator's response, if any, shall also be provided to the Document Repository.

4.4.2   Procedural Matters. Participating Parties may contact the Allocator ex parte regarding minor procedural matters, such as requesting an extension of time, and the Allocator has discretion whether or not to grant such requests. The Allocator will notify all Participating Parties of such communications and the Allocator's response.

4.4.3   Contact Initiated by Allocator. The Allocator may contact any Participating Party in writing at any time, provided that a copy of the written communication and any response from the Participating Party is provided to all Participating Parties and the Document Repository. The Allocator may request authorization from the Steering Committee to communicate orally with a Participating Party when the Allocator deems it would be a cost-effective means for collecting information or would otherwise expedite the Allocation Process. The Steering Committee shall have discretion whether to grant such authorization and whether to appoint a member of the Steering Committee to hear the communication between the Allocator and the Participating Party.

**KC_Docs_001249**

5.    **Allocation Process.**

5.1   Information Gathering.

      5.1.1   Questionnaire Development.  In accordance with the schedule set forth in Exhibit A, the Allocator will develop a questionnaire, which shall include a certification, to be used by the Allocator to collect information from Participating Parties (the "Questionnaire"). Among other questions to be developed by the Allocator, the Questionnaire shall require that, to the extent a Participating Party references its response to EPA's 104(e) letter in responding to the Questionnaire, the Participating Party shall provide any updated information responsive to the Questionnaire.

      5.1.2   Suggesting Additional Topics.  Participating Parties may raise objections and suggest questions or areas of inquiry to the Allocator.  The Allocator shall have discretion to decide how to address any objections, questions, or areas of inquiry, except for information pertaining to EAAs under Section 5.3.3, which shall be included.

      5.1.3   Responding to Questionnaire.  The Allocator will collect Questionnaire responses and follow up with any Participating Parties that do not submit sufficient information. The Questionnaire responses and any supplementations will be added to the Document Repository.  If any responsive documents are withheld from the Questionnaire responses, the withholding Participating Party shall simultaneously provide a privilege log that follows the format required by the Allocator.

      5.1.4   Continuing Disclosure Obligation. Until the deadline for submitting additional material pursuant to Section 5.1.6.2, Participating Parties shall have a continuing duty to supplement their Questionnaire responses by promptly adding any newly discovered or developed material information to the Document Repository.  After this deadline, if the Allocator determines that the interests of justice warrant further supplementation of Questionnaire responses, he may require the Participating Parties to do so.

      5.1.5   Confidentiality.

      5.1.5.1   Statutory Prohibitions.  If a Participating Party contends that a federal or state statute, other than one concerning the attorney client privilege, expressly prohibits it from disclosing a document otherwise required to be produced in this proceeding, it shall provide notice to the Participating Parties and the Allocator and identify the document.  The Allocator shall not have the authority to compel the production of the document but may, in his discretion, draw inferences adverse to the Participating Party based on the non-disclosure.

      5.1.5.2   Responses to EPA's CERCLA Section 104(e) Requests.  With the exception of documents and information previously designated confidential pursuant to 42 U.S.C. § 9604(e)(7) ("Confidential Business Information" or "CBI"), Participating Parties shall submit a copy of their complete responses to EPA's CERCLA section 104(e) information requests to the Document Repository.  The Participating Parties shall separately disclose their CBI to the Allocator who shall review the CBI.  If the Allocator determines that the materials do not qualify as CBI, he shall advise the Participating Parties, after which the Participating Party that submitted the information must promptly provide it to the Document Repository.  If in

- 8 -

KC_Docs_001250

making either the Preliminary Allocation or the Final Allocation under Section 5.9, the Allocator relies upon CBI, the Allocator shall make reference to the CBI with sufficient detail to describe the basis of the Allocator's decision and, in the case of the Preliminary Allocation, to allow the other Participating Parties to submit informed arguments in response.

5.1.5.3   Other Confidential Documents.  If, in addition to CBI documents described above, a Participating Party considers any portion of the documents it wishes to use in the Allocation Process to be exempt from disclosure or otherwise protectable under Washington State public records disclosure law or the federal Freedom of Information Act, that Participating Party shall provide notice to the other Participating Parties and identify and clearly mark such portions as "CONFIDENTIAL," "PROPRIETARY," or "BUSINESS SECRET."

5.1.5.4   Communications Are Confidential.  The Participating Parties intend that their communications with the Allocator and with one another during the Allocation Process, whether written or oral, be kept confidential among the Participating Parties and the Allocator to the fullest extent allowed by law.  The Allocation Process shall be considered a mediation that is covered by RCW 42.56.600 (exemption from public disclosure for records of mediation communications) and RCW 7.07.030 (mediation communications are privileged). Mediation communications, as defined in RCW 7.07.010(2), including but not limited to Position Papers, Rebuttals, Replies, Questionnaire responses, and deposition transcripts, shall also be kept confidential to the fullest extent allowed by law.

5.1.5.5   Federal PRP Participation and Confidentiality.  The United States on behalf of certain of its departments, instrumentalities, or agencies may participate in this Allocation Process as a Participating Party ("Federal PRPs").  The Federal PRPs' access to information and documents in the Allocation Process will be governed by the terms of Exhibit B. If the Federal PRPs do not participate in the Allocation Process, Exhibit B shall be null and void.

5.1.5.6   Notice of Requests for Public Records.  If a Participating Party that is a public entity receives a request for public records under state or federal law that includes records marked as described above or of communications made during the Allocation Process, the public entity shall immediately notify all Participating Parties whose documents or communications are or may be subject to the request.  Notice shall be given in the most expeditious manner available.  The Participating Parties whose documents or communications are or may be subject to the request for records may take whatever action they deem appropriate, such as seeking a restraining order from a court with jurisdiction.

5.1.5.7   Compliance with Public Records Requests.  Subject to Section 5.1.5.6, the public entity that received the request shall proceed in its usual manner to comply with applicable state or federal law, including the assertion of exemptions from disclosure that the public entity reasonably believes are applicable.

5.1.6   Additional Information.

5.1.6.1   Requests by the Allocator.  The Allocator may, at any time, request additional information from a Participating Party if the Allocator deems it necessary.

- 9 -

KC_Docs_001251

5.1.6.2   <u>Submission by Participating Parties</u>.  In accordance with the schedule set forth in Exhibit A, the Participating Parties may submit additional factual information regarding themselves and other PRPs, including but not limited to information on costs included in Claims Addressed in the Allocation Process they seek to recover in the Allocation Process.  In their submissions to the Allocator, the Participating Parties may only include or rely upon documents that are provided to the Document Repository in accordance with the schedule set forth in Exhibit A.

5.1.6.3   <u>No Additional Discovery</u>.  The Participating Parties shall not engage in discovery concerning the matters to be allocated in the Allocation Process against other Participating Parties in the Allocation Process, except for the information gathering and depositions expressly allowed by this MOA.  A Participating Party may, however, ask the Allocator to request documents from another Participating Party, and the Allocator has discretion to grant the request for good cause.  The Allocator shall consider whether the requested information will advance the Allocation Process and decide whether to grant the request for all, some, or none of the requested information.  The Participating Party from whom the Allocator requests documents shall comply with the Allocator's requests; provided, however, that if any responsive documents are withheld from the subsequent response, the withholding Participating Party shall simultaneously provide a privilege log that follows the format required by the Allocator.

5.1.6.4   <u>Public Records Requests</u>.  The Participating Parties shall not use state or federal public records laws to request documents that address matters that are intended to be resolved through the Allocation Process from the Participating Parties that are governmental entities, unless the requesting party first consults with counsel for the governmental entity and either (a) the governmental entity agrees in writing to such a request or (b) the documents are being sought for a purpose other than for the Allocation Process.  For purposes of this Section, "Participating Parties that are governmental entities" means the Washington State Department of Transportation, the City of Seattle, the Port of Seattle, King County, and all agencies of the United States except for EPA.  A governmental entity that receives such a request may request information from the requesting party to determine if the criterion in (b) is met.  Records obtained pursuant to (b) shall not be used in the Allocation Process unless the Participating Party wishing to use them has obtained copies from another source that is not subject to this provision or the Allocator grants a request to use them pursuant to Section 5.1.6.3.

(i)   If the governmental Participating Party denies a request on the ground that it is prohibited by this Section 5.1.6.4, the requesting party may notify the Allocator and request that he resolve the issue of whether the request is prohibited under this Section.  The Allocator's decision shall be final and in lieu of any other legal proceedings concerning the governmental entity's denial on the basis of the prohibition in this Section 5.1.6.4.  In resolving such a dispute, the Allocator may request information from the requesting party to determine if the criterion in 5.1.6.4(b) is met and the requesting party may provide the Allocator with information responsive to the Allocator's request and with whatever other information the requesting party deems necessary to support its position.

KC_Docs_001252

(ii)  If the governmental Participating Party's denial was based solely on the prohibition in this Section and the Allocator rejects the governmental entity's denial, in whole or in part, the governmental entity shall comply with the public records request in the same manner as it would in the absence of this MOA.  In such an event, the governmental Participating Party's initial five days for responding to a public disclosure act request shall begin the first business day following the date of the Allocator's decision.

(iii)  If the governmental Participating Party's denial is upheld, in whole or in part, the requesting party may ask the Allocator to request the excluded documents from the governmental entity pursuant to Section 5.1.6.3 above.

(iv)  Each and every Participating Party to this Allocation Process knowingly and voluntarily waives its rights under the Public Records Act, RCW 42.56, the Freedom of Information Act, 5 U.S.C. Section 552, and the Privacy Act of 1974, 5 U.S.C. Section 552a, to the extent necessary to fully implement and enforce this Section 5.1.6.4.

(v)  Any limitations, waivers, or rights created by this Section 5.1.6 with respect to the production or use of documents under state or federal public records laws shall be extinguished as to any Participating Party that withdraws from or is removed from this MOA.  Also, these limitations, waivers, and rights shall not survive termination of the MOA.

5.1.6.5   Exclusion of Documents.  If a governmental Participating Party believes that records requested under Section 5.1.6.4 were sought for the purpose of the allocation, notifies the requesting Participating Party of its objection, and produces the documents requested without seeking to deny or limit the request under Section 5.1.6.4, the governmental Participating Party may later ask the Allocator to exclude those documents from consideration in the allocation.  This would include excluding from consideration any part of an expert report or testimony or other submission that refers to or relies on such records.  The Allocator shall provide the Participating Party that received the documents an opportunity to challenge the request for exclusion and/or that Participating Party may ask the Allocator to include the documents in the allocation in accordance with Section 5.1.6.3.  This Paragraph shall not prevent the requesting Participating Party from using copies of the excluded documents in the allocation, if such copies are obtained from sources other than the governmental Participating Party that sought exclusion of the documents and/or by other means not inconsistent with this MOA.

5.1.6.6   Notice to Participating Parties.  If a Participating Party names another Participating Party in a written submission to the Allocator, including but not limited to Questionnaire responses, witness affidavits, Position Papers, expert reports, deposition transcripts, or other advocacy-related submittals, the submitting Participating Party shall notify the other Participating Party by email at the same time it makes such a submission.  Copies of all such notices shall also be submitted to the Document Repository.

KC_Docs_001253

5.1.7   Fact Witnesses.

5.1.7.1   Requesting a Deposition.  Any Participating Party may ask the Allocator to depose a fact witness.  The request shall be in writing and limited to two pages (single-spaced).  It must succinctly describe the background and suspected knowledge of the witness.  The request shall be provided to all other Participating Parties at the same time it is provided to the Allocator.  No more than five (5) business days thereafter, any Participating Party may file a statement opposing the deposition.  Such statement shall be limited to two (2) pages (single-spaced).  The Allocator may authorize the deposition for good cause.

5.1.7.2   Conduct of the Deposition.  The Allocator shall ask all questions at the deposition.  The Participating Parties may submit up to two (2) pages (single-spaced) to the Allocator listing suggested areas of inquiry.  Any Participating Party may elect to attend the deposition, but may not ask questions unless the Allocator determines it is necessary to prevent manifest injustice.  Additionally, counsel for a Participating Party may object during the deposition to the unauthorized disclosure of the Participating Party's confidential business information or privileged communications.  The Allocator will rule on any such objections.

5.1.7.3   Request to Resume the Deposition.  Upon the request of any Participating Party, the Allocator will allow resumption of the deposition.

5.1.7.4   Resumed Deposition.  At the resumed deposition, the Allocator shall serve as a Special Master, ensuring that the deposition proceeds efficiently and resolving all disputes (including the order of questioning and amount of time allotted to each Participating Party).  The Allocator may ask the deponent questions after the Participating Parties have completed their questions.

5.1.7.5   Deposition Transcripts.  The Steering Committee shall ensure that, as soon as available, deposition transcripts are posted in the Document Repository and notice is provided to the Participating Parties of such posting.

5.1.8   Rule 27 Perpetuation Depositions.  This MOA does not preclude a Participating Party from following the procedures set forth in Federal Rule of Civil Procedure 27(a) to seek to perpetuate testimony.

5.1.9   Expert Depositions.

5.1.9.1   Right to Question Experts.  Any Participating Party who elects to submit an expert report (including rebuttal expert reports) to the Allocator shall, in accordance with the schedule set forth in Exhibit A, produce an expert report meeting the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).  Any Participating Party shall have the right to depose (subject to the Allocator's exercise of his role as Special Master) any expert who authored an expert report.  If the expert cannot meaningfully testify regarding a material portion of the report, any Participating Party may request that the Allocator allow for a deposition of others who materially contributed to that portion of the report, and the Allocator shall have the discretion to grant or deny the request.

- 12 -

KC_Docs_001254

5.1.9.2   Conduct of the Expert Deposition.  The Allocator shall attend the expert's deposition and serve as a Special Master, ensuring that the deposition proceeds efficiently and resolving all disputes (including the order of questioning and amount of time allotted to each Participating Party).  The Allocator may question the deponent after the Participating Parties have completed their questions.  The Participating Party who is offering the expert may object during the deposition to the unauthorized disclosure of the Participating Party's confidential business information or privileged communications.  The Allocator will rule on any such objections.

5.1.9.3   Resumption of the Deposition. Upon the request of any Participating Party other than the Participating Parties that asked questions at the initial deposition, the Allocator may allow the resumption of the deposition for questions by the Allocator or, to prevent manifest injustice, by any Participating Party.

5.1.9.4   Location and Cost of the Expert Deposition.  Unless the Participating Party who offers the expert and the Participating Parties who will depose the expert agree otherwise, all expert depositions shall take place in Seattle, Washington, and the Participating Party offering the expert shall bear all fees and costs associated with the expert's preparation for and participation in the deposition.

5.1.9.5   Expert Deposition Transcripts.  The Steering Committee shall ensure that, as soon as available, expert deposition transcripts are posted in the Document Repository and notice is provided to the Participating Parties of such posting.

5.1.10  Witness Availability.  Each Participating Party agrees to use its utmost efforts to make available for deposition any witness from whom it submits a declaration or an affidavit, or who the party relies upon as the source of factual information.

5.1.11  Allocator Review Limited to Specific Materials.  In preparing the Preliminary Allocation and the Final Allocation, the Allocator will not do any independent research and will consider only Position Papers (as defined in Section 5.8), rebuttals, replies, comments by Participating Parties on the Preliminary Allocation, documents included or referenced in the aforementioned submittals, confidential records, decisions made by the Allocator on legal issues, case law and other applicable legal resources, and the RI/FS, Proposed Plan, and the Site ROD.  The Allocator will determine what weight to give materials submitted by the Participating Parties.

5.2   Document Repository.  All materials will be kept in a Document Repository that is accessible to all Participating Parties.

5.2.1   Document Repository Vendor.  The Participating Parties will utilize a Document Repository vendor to establish a Document Repository that is accessible by all of them.  The Document Repository will be designed so that each Participating Party can search and tag documents without other Participating Parties seeing their work.

5.2.2   Document Repository Contracts.  The LDWG Members solicited proposals from database vendors, selected one, and have negotiated a contract for the Document Repository.  Each Participating Party shall execute the contract with the database vendor.

- 13 -

KC_Docs_001255

5.2.3    Coordination and Issue Resolution.  The Steering Committee will communicate with the database vendor regarding issues that affect the database as a whole and will instruct the vendor as needed.  Participating Parties shall communicate directly with the database vendor regarding their own submissions and issues that do not affect other parties.  If a Participating Party requests that the vendor make additions or changes to the Document Repository database that may impact or alter the ability of other Participating Parties to access or use the Document Repository, the request will be referred to the Steering Committee by the vendor.  The Steering Committee, in consultation with the vendor, will decide whether to grant the Participating Party's request.  If the Steering Committee cannot reach consensus, the request will be granted, in whole or in part, if five (5) members of the Steering Committee agree to do so.

5.3    Early Action Areas.

5.3.1    Choice to Allocate EAA Costs.  If a Participating Party wants past or future costs for an EAA to be allocated by the Allocator according to a process parallel to and in general accordance with the Allocation Process set forth in this MOA (including Exhibit A) or by a different process using the same Allocator, and those costs are not included in the past costs to perform the RI/FS or the future costs to implement the Site ROD, that Participating Party must notify the Allocator and all Participating Parties by the deadline set forth in Exhibit A and identify those Participating Parties who would be involved in the EAA allocation.  Any of the Participating Parties who would be involved in the EAA allocation may decline, in which case the EAA past and future costs will not be allocated pursuant to this MOA.  If the EAA allocation proceeds under the MOA, the EAA allocation will not be included in the Allocation Shares as defined in Section 1.10, and, with respect to Participating Parties, only those Participating Parties that were identified as part of the EAA process and were given the opportunity to decline to participate in the EAA allocation may receive a liability share for the EAA being allocated.

5.3.2    Conduct of EAA Allocations.  If past or future costs of any EAAs are to be allocated, those allocations shall be conducted separately from the allocation of Claims Addressed in the Allocation Process and from the allocation of past or future costs from any other EAAs that are to be allocated.  The costs for EAA allocations shall be tracked separately and shall be paid only by those parties that participate in each separate EAA allocation.  The Allocator will contract separately with the Participating Parties involved in the EAA allocation and bill them separately.  The billing rates will be no higher than those the Allocator charges for the overall Allocation Process.  Participating Parties agree to enter into such separate contracts with the Allocator when they are involved in an EAA allocation.

5.3.3    Contamination from EAAs.  If requested by a Participating Party, the Allocator shall require Participating Parties to provide information regarding the contamination in an EAA and its alleged effect on other areas.  Participating Parties may assert that contamination from an EAA has spread to other parts of the Site, whether or not costs for that EAA are being allocated pursuant to this MOA.

- 14 -

KC_Docs_001256

5.4   Timeline.

5.4.1   Allocation Process Schedule. The Allocation Process shall proceed under the schedule set forth in Exhibit A. Upon motion of a Participating Party and reasonable opportunity for others to respond, the Allocator may extend the schedule deadlines for all parties if necessary. Individual Participating Parties may ask the Allocator for minor extensions of time, and the Allocator has discretion whether to grant such requests.

5.5   Legal Issues/Summary Adjudication.

5.5.1   Submission of Legal Issues or Summary Adjudication. In accordance with the schedule set forth in Exhibit A, the Participating Parties may submit requests to the Allocator for a determination as to whether a legal issue or summary adjudication is appropriate for resolution.

5.5.2   Setting Briefing Schedule. If the Allocator determines that a legal issue or summary adjudication may be appropriate for consideration, the Allocator will then set a briefing schedule for resolution of the legal issues involved.

5.6   Convening of Experts. If the Allocator determines that it would materially assist in his preparation of the Preliminary Allocation or the Final Allocation, the Allocator may convene some or all of the experts to discuss with them their expert reports and each Participating Party shall bear its own expert costs in such sessions. The sessions shall be transcribed, and the Steering Committee shall ensure that, as soon as available, the transcripts of the sessions are posted to the Document Repository and notice is provided to the Participating Parties of such posting. The Participating Parties may, if they elect, attend the sessions to observe.

5.7   Summary of Areas of Inquiry. Within ten (10) days following completion of the expert deposition process, the Allocator will provide the Participating Parties with a Summary of Areas of Inquiry Memorandum ("Summary"). To the extent practicable and strictly for the purpose of providing guidance to the Participating Parties with respect to the drafting of Position Papers, the Summary shall identify the areas of inquiry the Allocator recommends be addressed in the Position Papers. If the Allocator believes that it will serve the goals of the Allocation Process, the Summary shall also describe the Allocator's anticipated approach for allocating costs, including the technical and factual elements he may rely on in developing the Preliminary Allocation determinations. The Summary is not binding on the Allocator.

5.8   Position Papers.

5.8.1   Submitting Position Papers. Each Participating Party may submit to the Allocator a position paper that advocates the share it and other Participating Parties should be allocated ("Position Papers"). Position Papers may also advocate that shares be assigned to Absent Parties, Defunct Parties, or Recalcitrant Parties. Position Papers shall be submitted in accordance with the schedule set forth in Exhibit A, and shall be in the form of a memorandum that may attach or incorporate by reference expert reports, fact declarations, documents, or other evidence, but only if the memorandum's contents (other than legal analysis, argument, and facts subject to judicial notice), expert reports, fact declarations, documents, and other evidence have previously been submitted to the Document Repository in accordance with the schedule set forth

- 15 -

KC_Docs_001257

in Exhibit A ("Disclosed Materials").  As provided in Section 5.1.6.6 of this MOA, if a Participating Party names another Participating Party in a written submission to the Allocator, the submitting Participating Party shall notify the other Participating Party at the same time it submits the material to the Allocator.  If the Allocator determines, upon motion and after the opportunity for other Participating Parties to respond, that the interests of justice warrant the inclusion of late materials, the Allocator may allow such materials and opportunities for rebuttal.

      5.8.2   Rebuttal.  Each Participating Party shall have the opportunity to rebut the Position Papers submitted by other Participating Parties.  Rebuttals to Position Papers shall be submitted in accordance with the schedule set forth in Exhibit A, and shall be in the form of a memorandum that may attach or incorporate by reference Disclosed Materials.

      5.8.3   Reply.  Each Participating Party shall have the opportunity to reply to the rebuttals.  Replies shall be submitted in accordance with the schedule set forth in Exhibit A, and shall be in the form of a memorandum that may attach or incorporate by reference Disclosed Materials.

    5.9   Allocation.

      5.9.1   Preliminary Allocation.  The Allocator will issue a preliminary allocation (the "Preliminary Allocation") for Claims Addressed in the Allocation Process with an explanation of how the shares were calculated.  The allocation criteria to be considered by the Allocator shall include all applicable legal and equitable factors under CERCLA or MTCA and any other applicable law or legal principle that, in the judgment of the Allocator, would be considered by a court in apportioning or allocating liability and costs for the Site.

      5.9.2   Components of the Allocation.  In both the Preliminary Allocation and the Final Allocation, the Allocator will do two calculations: first, an All PRP Allocation; and second, a Participating Party Allocation.

      5.9.3   Response to Preliminary Allocation.  Each Participating Party will have the opportunity to provide a written response to the Preliminary Allocation.

      5.9.4   Final Allocation.  Following review of the Participating Parties' responses to the Preliminary Allocation, the Allocator will issue a final allocation (the "Final Allocation").  The Allocator's Final Allocation report shall be marked, "For Settlement Purposes Only; Not to Be Used in Litigation."  The report shall be kept confidential except as provided in Section 9.

      5.9.5   Contract Questions.  Any Participating Party may raise contract questions in its Positions Paper, provided that it first provides or receives notice of such questions in the responses to the Questionnaire and copies of any relevant contracts are placed in the Document Repository.  In that case, the Allocator shall rule on contract questions where a contract could shift responsibility for cleanup costs from one or more Participating Party to another.  The Allocator's ruling(s) will be documented in the Preliminary and Final Allocations and will identify the percentage of responsibility shifted between parties.  The Allocator shall first assign Allocation Shares to the contracting parties without considering contract questions and will then reassign Allocation Shares to the contracting parties based on his determinations on the contract questions.  The Allocator's rulings on contract issues will not increase or decrease the

- 16 -

KC_Docs_001258

Participating Party Equitable Shares assigned to Participating Parties that are not parties to the contract, beneficiaries to the contract, or have another legal or equitable basis for their shares to be affected by the contract. The Allocator shall determine whether he expects to spend more than twenty hours to resolve a contractual issue and, for those issues that he expects to take longer, he shall contract separately with the Participating Parties involved with that issue to bill them separately. The Allocator's hourly billing rates shall be the same as those the Allocator charges for the overall Allocation Process. Participating Parties shall enter into such separate contracts with the Allocator whenever they are involved with a contract issue presented for resolution by the Allocator by any Participating Party.

      5.9.6   <u>Accepting or Declining Allocation</u>. After the Allocator issues the Final Allocation, each Participating Party will have sixty (60) days to accept or decline its All PRP Share and its Participating Party Equitable Share. Those who decline will cease to participate in the Allocation Process, unless they participate in mediation pursuant to Section 6.

      5.9.7   <u>Contribution from Non-Participating Parties.</u> Nothing in this MOA shall prevent any Participating Party from seeking contribution for an Allocation Share from an Absent Party or a Recalcitrant Party.

**6.    Mediation.**

      6.1   <u>Required Mediation</u>. If Participating Parties who have been allocated a collective total of more than fifty percent (50%) of the Participating Party Equitable Shares in the Final Allocation decline their shares, then all Participating Parties that were allocated a Participating Party Equitable Share shall participate in mediation. The goal of such mediation shall be for as many Participating Parties as possible to accept their Allocation Shares (as they may be redistributed in the mediation) within the one hundred and twenty (120) day period designated in Paragraph 6.7, but at least enough so that the Participating Parties collectively accept more than fifty percent (50%) of the Participating Party Equitable Shares.

      6.2   <u>Voluntary Mediation</u>. Mediation may also be initiated: 1) By Participating Parties that choose to mediate among themselves; or 2) If one or more Participating Parties request that the entire group engage in mediation and Participating Parties who have been allocated a collective total of more than fifty percent (50%) of the Participating Party Equitable Shares agree to mediate.

      6.3   <u>Selecting a Mediator</u>. The parties involved in a voluntary mediation may select a mediator by whatever method they choose. For a required mediation, the selection of the mediator shall require the approval of those Participating Parties who have been allocated a collective total of more than fifty percent (50%) of the Participating Party Equitable Shares, provided that their selection is approved by more than fifty percent (50%) of the Participating Parties (one vote per party) that will be involved in the mediation.

      6.4   <u>Mediator Contract</u>. The Participating Parties shall enter into a contract with the mediator and pay the mediator's costs in proportion to their Final Mediation Shares, or if mediation fails, in proportion to their Participating Party Equitable Shares.

KC_Docs_001259

6.5   Reaching Agreement.  The mediator shall convene the Participating Parties and work with them to reach an agreement on the distribution of Allocation Shares among the Participating Parties and implementation of the Site ROD.  A Final Agreed Allocation Summary may be developed to memorialize any such agreement.

6.6   Mediation Requirements.  The mediation will be conducted based solely on the documents already located in the Document Repository and materials submitted to the Allocator prior to the issuance of Allocation Shares.  No Participating Party shall be required to provide any further documents or information in connection with the mediation.  The mediator will not conduct any independent research or analysis.  A Participating Party may choose to submit a statement of that party's position to the mediator but cannot be required to do so.

6.7   Termination of Mediation.  A voluntary mediation may terminate whenever the parties involved choose to do so.  A required mediation may be terminated any time more than ninety (90) days following the hiring of a mediator if those Participating Parties who have been allocated a collective more than fifty percent (50%) of the Participating Party Equitable Shares or more than fifty percent (50%) of the parties involved in the mediation (one vote per party) agree to terminate the mediation.  If an agreement in principle has not been reached within 120 days following hiring of the mediator, then the mediation shall terminate unless the mediator believes that further work would result in an agreement and more than fifty percent (50%) of the parties involved in the mediation (one vote per party) agree, in which case the mediation shall be extended for up to thirty (30) days.

## 7.   Withdrawal and Expulsion.

7.1   Withdrawal.  A Participating Party may withdraw from the Allocation Process at any time upon written notice to the Allocator and the other Participating Parties.

7.2   Expulsion.  A Participating Party may be expelled from the Allocation Process (a) at any time prior to the Allocator's issuance of the Final Allocation, by a seventy-five percent (75%) vote of the Participating Parties; or (b) at any time after the issuance of the Final Allocation, by Participating Parties who have been allocated and accepted seventy-five percent (75%) of the total shares.  The Federal PRPs can be expelled only for non-payment of their share of Shared Costs or upon a vote of seventy-five percent (75%) of the Participating Parties and the concurrence of the Allocator.

7.3   Paying Shared Costs.  A Participating Party that withdraws or is expelled shall pay Shared Costs incurred through the withdrawal or expulsion date, even if the Shared Costs have not yet been billed; provided, however, that if all but one LDWG Member has withdrawn or been expelled, or more than fifty percent (50%) of the initial Participating Parties have withdrawn or been expelled, then the remaining Participating Parties may decide, by majority vote, to terminate the contract with the Allocator and the contracts with other contractors and vendors. The Participating Parties that have withdrawn or been expelled and those that have not shall all pay equal shares of any moneys owed to the Allocator or other vendors or contractors due to early termination of their contracts.

- 18 -

KC_Docs_001260

## 8. Settlements.

8.1    Disclosing Settlements.  Notwithstanding any other provision in this MOA, any Participating Party or group of Participating Parties is free to settle, at any time, its claims with respect to the Site with any other Participating Party or non-Participating Party, provided that any such Participating Party or group of Participating Parties must disclose the fact of the settlement to the Allocator and to the other Participating Parties as soon as feasible but no more than thirty (30) days after executing the settlement.  Any group settlement between a Recalcitrant Party and Participating Parties that have accepted a collective total of at least seventy-five percent (75%) of the Participating Party Equitable Shares shall include a requirement that the Recalcitrant Party pay its pro rata share of the Shared Costs incurred prior to the settlement as well as any additional amounts as determined appropriate by the Participating Parties.  This MOA does not preclude any Participating Party from approaching non-participating PRPs and attempting to settle with them at any time.

8.2    Cash-Out Settlements.

8.2.1    Cash-Out Proposals.  After the Allocator issues the Final Allocation as described in Section 5.9.4 and concurrently with the negotiations described in Sections 8.3. and 8.4 below, any Participating Party may propose a cash-out settlement with any other Participating Party or group of Participating Parties.  It is anticipated, although not required, that those Participating Parties requesting cash-out settlements will request them from those Participating Parties that have expressed an intent to implement the Site remedy.  All cash-out settlement proposals shall be in writing and directed to the Steering Committee for administrative purposes and to the specific Participating Parties with whom the cash-out settlement is proposed.  Any Participating Party that receives a cash-out settlement proposal shall provide an initial response by the deadline set forth in Exhibit A.

8.2.2    Cash-Out Negotiations.  By the deadline set forth in Exhibit A, all Participating Parties involved in a proposed cash-out settlement will meet to discuss the proposal.  The Participating Parties to whom a cash-out settlement proposal is directed shall negotiate in good faith; however, there is no guarantee that the parties will reach agreement on cash-out settlements.  If the negotiating parties are unable to reach an agreement, they may engage the Allocator (or another neutral) to assist them by the deadline set forth in Exhibit A.  The Participating Parties anticipate that if they engage the Allocator or another neutral to assist with negotiations, that process will be streamlined and cost effective, and will be based solely on the documents already located in the Document Repository and materials submitted to the Allocator prior to the issuance of Allocation Shares.  No Participating Party shall be required to provide any further documents or information in connection with these negotiations.  The Allocator or other neutral will not conduct any independent research or analysis.  A Participating Party may choose to submit a statement of that party's position to the Allocator or other neutral but cannot be required to do so.  The Allocator's (or other neutral's) fees will be shared by all Participating Parties, whether they are involved in the negotiations or not.

8.2.3    Cash-Out Premium.  Cash-out settlements may include payment of an amount to offset the risks assumed by those Participating Parties that do not cash out.  Such risks may include, but are not limited to, the degree of confidence in cost estimates, potential cost

- 19 -

KC_Docs_001261

increases, construction uncertainties, additional requirements by EPA or other agencies, unanticipated conditions, and compliance with EPA's five-year reviews.

     8.2.4   Effect of Cash-Out Settlements.

       8.2.4.1   Indemnification. Participating Parties that agree to cash out other Participating Parties shall release, defend, and indemnify them for all past and future costs resolved by the Consent Decree.

       8.2.4.2   Liability to United States. During Consent Decree negotiations pursuant to Section 8.4 below, the Participating Parties negotiating with EPA and the U.S. Department of Justice ("USDOJ") shall seek to persuade them to resolve the liability of those who have cashed out to the United States for all matters resolved under the Consent Decree, including offering contribution protection.

       8.2.4.3   Voting. For purposes of Section 2.3, the weighted votes of Participating Parties that are cashed out shall be assumed by the Participating Parties who agree to cash them out.

       8.2.4.4   Confidentiality and Disclosure. Participating Parties that are cashed out will continue to be parties to this MOA for purposes of confidentiality and disclosure.

     8.2.5   Early Cash-Outs. Nothing in this Section 8.2 shall prohibit any Participating Party from proposing a cash-out settlement with the other Participating Parties or some subset thereof at an earlier time than set forth in Exhibit A. The Participating Parties to whom an early cash-out settlement proposal is directed shall negotiate in good faith; however, there is no guarantee that the parties will reach agreement on early cash-out settlements.

    8.3   Negotiation of Response Cost Settlement and Implementation Agreement. Provided that Participating Parties representing a minimum of fifty percent (50%) of the Participating Party Equitable Shares have accepted their shares following issuance of the Final Allocation, or that Participating Parties representing a minimum of fifty percent (50%) of the Final Mediation Shares have accepted such shares, such Participating Parties will endeavor to negotiate an agreement among themselves that resolves all Claims Addressed in the Allocation Process ("Response Cost Settlement"). Either as a component of the Response Cost Settlement agreement or in a separate agreement, and subject to the same threshold requirement of fifty percent (50%) of the Participating Party Equitable Shares or Final Mediation Shares having been accepted by the Participating Parties, the Participating Parties that have accepted their shares will also endeavor to negotiate an agreement among themselves for the implementation of the remedy ("Implementation Agreement").

    8.4   Consent Decree. If agreement is reached regarding a Response Cost Settlement and an Implementation Agreement as described in Section 8.3 above, the Participating Parties that execute those agreements may negotiate with EPA regarding resolution of liability at the Site through entry of one or more consent decrees. Nothing in this MOA shall preclude any Participating Party from negotiating a consent decree with EPA at any time.

- 20 -

KC_Docs_001262

9.      **Disclosure of Final Allocation.**

9.1     Limited Disclosure.  Except as provided in this Section 9 and in Section 13, no Participating Party may disclose or cause to be disclosed the Preliminary Allocation, Final Allocation, or the Allocation Share or Final Mediation Share of another party who was a Participating Party at the time the Final Allocation was issued.

9.2     No Breach of Confidentiality.  A disclosure pursuant to this Section 9 shall not be a breach of confidentiality under this MOA.

9.3     Disclosure During Consent Decree Negotiations.  During consent decree negotiations, the Participating Parties may disclose either the Allocator's Final Allocation report and any Allocation Shares or, in the event of mediation pursuant to Section 6, the Final Agreed Allocation Summary and any Final Mediation Shares to EPA, USDOJ, Ecology, and Ecology's representatives at the Washington Attorney General's Office, except that identifying information may be redacted upon written request for Participating Parties that were assigned less than a 3 percent Participating Party Equitable Share and did not accept it.  If the Participating Parties engage in mediation pursuant to Section 6.1, they may disclose the Final Agreed Allocation Summary developed pursuant to Section 6.5, with the same redactions as for the Final Allocation report.

9.4     Judicial Reasonableness Hearing.  To the extent necessary, the information described in this Section 9 may also be used in the judicial reasonableness hearing regarding a proposed consent decree or other resolution of liability.

9.5     Written Consent.  Any Participating Party may disclose the Allocation Share of any other Participating Party with the written consent of that other Participating Party.

9.6     Self-disclosure.  Any Participating Party may disclose its own Allocation Share to any other person.

9.7     Disclosure During Cost Recovery or Contribution Litigation. Those Participating Parties that accept their Allocation Shares or Final Mediation Shares after issuance of the Final Allocation may disclose in a cost recovery or contribution action: (a) their own Allocation Shares or Final Mediation Shares and the Allocation Shares or Final Mediation Shares of all Absent Parties, Defunct Parties, and Recalcitrant Parties; and (b) those portions of the Preliminary and Final Allocation reports and the Final Agreed Allocation Summary describing the Allocation Process, including the information considered and the factors used to assign Allocation Shares. The Allocation Shares of Participating Parties who decline their Allocation Shares after issuance of the Final Allocation shall not be disclosed without their written consent.

10.     **Other Decision-Making.**

10.1 Steering Committee.

10.1.1 Composition.  By the deadline set forth in Exhibit A, a Steering Committee shall be formed.  The Steering Committee shall be composed of a representative from each of the LDWG Members, along with four (4) other Participating Parties who receive the four

KC_Docs_001263

highest votes of the remaining Participating Parties. In voting for the non-LDWG Steering Committee members, each of the non-LDWG Member Participating Parties shall cast up to four (4) votes but may not cast more than one (1) vote for the same Participating Party.

10.1.2 <u>Role of the Steering Committee</u>. The Steering Committee shall call for meetings and votes of all the Participating Parties, set agendas, communicate with the Allocator, and perform other tasks described in this MOA. Any Participating Party may propose that an issue be considered by the Steering Committee and it shall be considered if at least two members of the Steering Committee support doing so.

10.2 <u>Replacing Allocator</u>. If the Allocator becomes unable to serve, the Steering Committee shall establish a process for recommending a replacement. The Steering Committee's recommendation of a replacement Allocator must be ratified by at least seventy-five percent (75%) of the other Participating Parties. The Allocator may be terminated only with the agreement of at least seventy-five percent (75%) of the Steering Committee members and at least seventy-five percent (75%) of the other Participating Parties.

10.3 <u>Amending the Allocation Process</u>. The Allocation Process set forth in this MOA may be amended only with the agreement of at least seventy-five percent (75%) of the Steering Committee members and at least seventy-five percent (75%) of the other Participating Parties.

## 11. Shared Costs.

11.1 <u>Shared Costs</u>. "Shared Costs" are costs incurred pursuant to the contract with the Allocator pursuant to Section 4.2 above and any other contract or invoice approved by a majority of the Steering Committee for services related to the Allocation Process. If the Steering Committee determines certain costs should be shared on other than a per capita or Final Participating Party Equitable Share basis, it shall notify the Participating Parties and give them an opportunity to comment before issuing any notice of Shared Costs that would contain an adjustment for those costs. Any such determination requires the approval of a majority of the Steering Committee.

11.2 <u>Initial Distribution of Shared Costs</u>. The Participating Parties initially shall share the Shared Costs of the Allocation Process as follows, subject to reallocation as provided in Section 11.3:

11.2.1 <u>LDWG Members</u>. The LDWG Members shall share fifty percent (50%) of all Shared Costs of the Allocation Process equally on a per capita basis up to $200,000 per LDWG Member per year ($800,000 total per year).

11.2.2 <u>Other Participating Parties</u>. All other Participating Parties that are not members of LDWG shall share the remaining fifty percent (50%) of all Shared Costs equally on a per capita basis.

11.2.3 <u>Amounts Over $1.6 Million</u>. If Shared Costs exceed a total of $1.6 million in any particular year, the amount over and above $1.6 million will initially be shared equally on a per capita basis per Participating Party.

KC_Docs_001264

11.3  Reallocation of Shared Costs.  Once the Final Allocation has been issued, the Shared Costs shall be recalculated according to the Final Allocation and each Participating Party shall pay or receive reimbursements so that its total contribution conforms to its Participating Party Equitable Share, whether or not that Participating Party has accepted such share and regardless of whether the Final Allocation is ultimately accepted by a sufficient number of Participating Parties. Shared Costs from the date of issuance of the Final Allocation forward shall be shared based on each party's Participating Party Equitable Share.

11.4  United States' Share of Costs.  Any requirement for the payment or obligation of funds by the United States shall be subject to the availability of appropriate funds legally available for such purpose, and no provision of this MOA shall be interpreted to require obligation or payment of funds in violation of the Anti-Deficiency Act, 31 U.S.C. §§ 1341, 1342, and 1511-1519.  This MOA will become effective and bind the United States only after execution of form OBD-47 with a contract between the United States and the Allocator.

11.5  Participating Parties Bear Their Own Costs.  Each Participating Party will bear all of its own costs related to the Allocation Process, including but not limited to costs for attorneys, staff, experts, report preparation, and document production.

11.6  Failure to Pay.  In the event that a Participating Party fails to pay its Shared Costs, those parties that are holding contracts for the Allocator or other vendors providing services that are part of the Shared Costs may bill the rest of the Participating Parties for the unpaid costs on the same basis as Shared Costs are distributed.  The Steering Committee shall have a direct cause of action against the Party that failed to pay and shall have the right, but not the obligation, to seek recovery on behalf of the Participating Parties from the Party that failed to pay, including hiring counsel for that purpose.  The costs of seeking recovery of unpaid Shared Costs shall be charged as Shared Costs to the remaining Participating Parties.  The Steering Committee shall be entitled to recover pre and post-judgment interest and its attorney fees and litigation expenses from the Party that failed to pay.  The Party holding the contract will cooperate with the Steering Committee, providing documentation and testimony as needed, and assigning contract rights if necessary to recover the unpaid amount.  Any amount recovered by the Steering Committee shall be credited to the Participating Parties; First, to reimburse them for the Shared Costs they paid for the recovery efforts; and, Second, to reimburse them for the amount they each paid of the unpaid Shared Costs.  If the recovered funds are insufficient to reimburse the Participating Parties fully, then the recovered funds shall be credited in proportion to the amount that each Participating Party paid.

## 12.  Litigation.

12.1  Participating Parties Reserve All Claims, Rights, and Defenses.  The Participating Parties reserve all claims, rights, and defenses, including claims, rights, and defenses against one another, with respect to past and future costs that are subject to the Allocation Process and with respect to EAA costs. The Participating Parties agree that the time from the effective date of this MOA through and including the date a party withdraws from this MOA, or the date the Final Allocation is issued, or, for EAA allocations under Section 5.3.1 and 5.3.2, the date the Allocator makes a final decision, shall not be included in computing the deadline under any statute of limitations that may be applicable to the commencement of any action by one Participating Party

- 23 -

KC_Docs_001265

against another, with respect to past and future costs that are being allocated by the Allocator. This MOA is without prejudice to any Participating Party's right to assert that a statute of limitations has run prior to the effective date of this MOA or after a Participating Party has withdrawn from this MOA or the Allocation Process has been completed.

12.2 No Initiation of Litigation Among Participating Parties During Term of This MOA. Except with respect to claims identified on Exhibit C or for the limited purpose of perpetuation depositions authorized by Section 5.1.8, the Participating Parties shall not initiate litigation against one another during the term of this MOA with respect to the resolution of Claims Addressed in the Allocation Process and allocated by the Allocator, but reserve the right to initiate litigation against each other upon completion of the Allocation Process or upon a Participating Party's withdrawal from this MOA. This provision does not limit the rights of any Participating Party to initiate litigation against any person or entity that is not a Participating Party, nor does it limit the rights of any Participating Party to initiate litigation regarding a contract with one or more other Participating Party where all Participating Parties that are parties to the contract have expressly chosen not to have the Allocator rule on issues arising under that contract per Section 5.9.5 above.

## 13. Insurance.

The Participating Parties do not intend hereby to make any agreement that will prejudice any Participating Party with respect to its insurers and, by entering into this MOA, anticipate that the actions taken pursuant to this MOA will benefit such insurers. Nothing in this MOA is intended to prevent a Participating Party from sharing this MOA and information developed pursuant to this MOA with a Participating Party's insurance carriers with direction that the carrier keep the information confidential, and doing so shall not be construed as violating any confidentiality provisions of this MOA.

## 14. Relationship of Participating Parties.

14.1 Legal Advice. No Participating Party, or representative or counsel for any Participating Party, has acted as counsel for any other Participating Party with respect to such Participating Party's entering into this MOA, except as expressly engaged by such Participating Party with respect to this MOA, and each Participating Party represents that it has sought and obtained any appropriate legal advice it deems necessary prior to entering into this MOA.

14.2 No Attorney/Client Relationship. No Participating Party or its representative shall act or be deemed to act as legal counsel or representative of any other Participating Party, unless expressly retained by such Participating Party for such purpose, and except for such express retention, no attorney/client relationship is intended to be created between or among the Participating Parties, their representatives, and respective attorneys.

14.3 No Partnership or Joint Venture and/or Principal and Agent Relationship. Nothing herein shall be deemed to create a partnership or joint venture and/or principal and agent relationship between or among the Participating Parties.

14.4 No Liability for Acts or Omissions Under this MOA. No Participating Party or its representative(s) serving on any committee shall be liable to any Participating Party for any

- 24 -

KC_Docs_001266

claim, demand, liability, cost, expense, legal fee, penalty, loss, or judgment incurred or arising as a result of any acts or omissions taken or made under this MOA.

## 15. Denial of Liability.

Each Participating Party understands and agrees that, by entering into this MOA, it does not admit and specifically denies liability or fault for any and all of the facts, legal contentions, and occurrences alleged against it with respect to the Site. Neither this MOA nor any information submitted or any action taken by any Participating Party pursuant to this MOA shall constitute, be interpreted, construed, or used as evidence of any admission of liability, law or fact, a waiver of any right or defense, nor an estoppel against any Participating Party.

## 16. Entire Agreement.

This MOA constitutes the entire understanding of the Participating Parties with respect to its subject matter.

## 17. Governing Law.

This MOA is to be construed in accordance with the laws of the State of Washington, except with respect to the Federal PRPs, in which case it is to be construed in accordance with the laws of the United States.

## 18. Disputes Regarding Interpretation of MOA.

If disputes regarding interpretation of this MOA arise, the Participating Parties shall use their best efforts to agree on a resolution. If the Participating Parties cannot resolve any such disputes within thirty (30) days, such disputes shall be resolved by the Allocator.

## 19. Notices.

All notices, bills, invoices, reports, and other communications to or by a Participating Party shall be sent to the authorized representative(s) designated at the time the Participating Party executes this MOA or any different representative(s) subsequently provided to the Steering Committee.

## 20. Successors and Assigns.

This MOA shall be binding upon the successors and assigns of the Participating Parties. No assignment or delegation of the obligation to make any payment or reimbursement hereunder shall release the assigning Participating Party without the prior written consent of two-thirds of the other Participating Parties.

## 21. Counterparts.

This MOA may be executed in multiple counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

KC_Docs_001267

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:

*8th Avenue Terminals, Inc.*

Signed for by: _____

Print Name and Title: Rockwell Smith, SVP

Authorized Representative(s) designated to receive notices under this MOA:

> Name: *Edward B. Vinson*
> Company Name: *DeNovo Properties*
> Address: *1302 W. Randolph Street, Chicago, IL 60607*
> Phone Number: *(312) 733-9370*
> Email Address: *evinson@denovogrp.com*

> Name: *Josh M. Lipsky*
> Company Name: *Cascadia Law Group PLLC*
> Address: *1201 Third Avenue, Suite 320, Seattle WA 98101*
> Phone Number: *(206) 292-2633*
> Email Address: *jlipsky@cascadialaw.com*

> Name: *Julia Shemesh*
> Company Name: *Crowley Marine Services, Inc.*
> Address: *1102 SW Massachusetts, Seattle WA 98134-1030*
> Phone Number: *(206) 332-8029*
> Email Address: *julia.shemesh@crowley.com*

Date:          April 24, 2014

KC_Docs_001268

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:

**Ash Grove Cement Company**

Signed for by: _____

Print Name and Title: *Michael J. Hrizuk, Senior Vice President-Manufacturing*

Authorized Representative(s) designated to receive notices under this MOA:

Name: *John Nelson*
Company Name: *Ash Grove Cement Company*
Address: *11011 Cody, Overland Park, KS 66210*
Phone Number: *(913) 319-6003*
Email Address: *john.nelson@ashgrove.com*

Name: *Curtis Lesslie*
Company Name: *Ash Grove Cement Company*
Address: *11011 Cody, Overland Park, KS 66210*
Phone Number: *(913) 319-6003*
Email Address: *curtis.lesslie@ashgrove.com*

Name: *Josh M. Lipsky*
Company Name: *Cascadia Law Group PLLC*
Address: *1201 Third Avenue, Suite 320, Seattle WA 98101*
Phone Number: *(206) 292-2633*
Email Address: *jlipsky@cascadialaw.com*

Name: *Joseph A. Rehberger*
Company Name: *Cascadia Law Group PLLC*
Address: *606 Columbia Street NW, Suite 212, Olympia, WA 98501*
Phone Number: *(360) 786-5062*
Email Address: *jrehberger@cascadialaw.com*

Date: *April 25, 2014*

- 26 -

KC_Docs_001269

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: __Ball Corporation_____

Signed for by: _____*Kent Bickell*_____

Print Name and Title: _Kent Bickell___ - EHS Manager_____

Authorized Representative(s) designated to receive notices under this MOA:

Name:_____Kent Bickell_____
Company Name:____Ball Corporation_____
Address:__9300 W. 108th Circle, Westminster, CO 80021
Phone Number:_____303.460.5235_____
Email Address:____kbickell@ball.com_____

Date:_____4/23/2014_____

- 26 -

KC_Docs_001270

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: _THE BOEING COMPANY_

Signed for by: _Steven E. Rusak_

Print Name and Title: _STEVEN E. RUSAK, PRINCIPAL SENIOR COUNSEL_

Authorized Representative(s) designated to receive notices under this MOA:

Name: _MARK SCHNEIDER + KATIE PAGE_

Company Name: _PERKINS COIE LLP_

Address: _1201 THIRD AVE, SUITE 4900, SEATTLE, WA 98101_

Phone Number: _206 - 359 - 8000_

Email Address: _MWSCHNEIDER @ PERKINSCOIE · COM_
_KPAGE @ PERKINSCOIE · COM_

Date: _April 3, 2014_

- 26 -

KC_Docs_001271

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:   Boyer Towing, Inc. and its affiliate, Boyer Logistics, Inc.

Signed for by:
Print Name and Title:   Boyer Halvorsen, President, Boyer Towing, Inc.
                        Boyer Halvorsen, President, Boyer Logistics, Inc.

Authorized Representative(s) designated to receive notices under this MOA:

| | |
|---|---|
| Firm Name: | Johannessen & Associates, P.S. |
| Attorney Names: | Kim Maree Johannessen, Ashley E. Pedersen, Erica A. Doctor |
| Address: | 5413 Meridian Ave. N., Suite B |
| | Seattle, WA  98103-6166 |
| Phone Number: | (206) 632-2000 |
| Facsimile: | (206) 632-2500 |
| Email Address: | kmj@johanassocs.com, aep@johanassocs.com, |
| | erica@johanassocs.com |

Date:   April 25, 2014

- 26 -

KC_Docs_001272

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:    The City of Seattle

Signed by:

Jorge Carrasco,
General Manager and Chief Executive Officer, Seattle City Light

And by:

Ray Hoffman, Director, Seattle Public Utilities

Date:

Authorized Representative(s) designated to receive notices under this MOA:

        Name:            Laura Wishik
        Company:         Seattle City Attorney's Office
        Mail Address: PO Box 94769
                       Seattle, WA 98124-4769
        Deliveries:      City Hall
                       600 Fourth Ave., 4th Floor
                       Seattle, WA 98124-4769
        Phone:           (206) 684-8199
        Email:           Laura.Wishik@Seattle.gov

107

KC_Docs_001273

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: Duwamish Shipyard, Inc.

Signed for by: _____

Print Name and Title: Kyle McCleary, Secretary/Treasurer

Authorized Representative(s) designated to receive notices under this MOA:

    Firm Name: Johannessen & Associates, P.S.
    Attorney Names: Kim Maree Johannessen, Ashley E. Pedersen, Erica A. Doctor
    Address: 5413 Meridian Ave. N., Suite B, Seattle, WA 98103
    Phone Number: (206) 632-2000
    Facsimile: (206) 632-2500
    Email Address: kmj@johanassocs.com, aep@johanassocs.com, erica@johanassocs.com

Date: April 25, 2014

KC_Docs_001274

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: _Holcim (US) Inc._

Signed for by: _Jodie Earle_
Print Name and Title: _Jodie Earle, Compliance Director_

Authorized Representative(s) designated to receive notices under this MOA:
Name: _Jodie Earle_
Company Name: _Holcim (US) Inc._
Address: _6211 Ann Arbor Road, Dundee, MI 48131_
Phone Number: _734.529.4360_
Email Address: _jodie.earle@holcim.com_

Date: _April 23, 2014_

KC_Docs_001275

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: Harald Hurlen and Hurlen Construction

Signed for by:

Print Name and Title: Harald Hurlen, President of Hurlen Construction

Authorized Representative(s) designated to receive notices under this MOA:
   Name: Ken Lederman, Foster Pepper, PLLC
   Company Name: Hurlen Construction
   Address: 1111 Third Ave., Suite 3400, Seattle, WA 98101
   Phone Number: (206) 447-6267
   Email Address: ledek@foster.com

Date: 4/25/2014

- 26 -

KC_Docs_001276

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: S & JA Family Limited Partnership

Signed for by: _____

Print Name and Title:  Clark J. Davis, Attorney

Authorized Representative(s) designated to receive notices under this MOA:

      Name: Clark J. Davis
      Company Name: Davis Law Office, PLLC
      Address: 7525 Pioneer Way, Suite 101, Gig Harbor, WA 98335
      Phone Number: 253-858-9423
      Email Address: cdavis@cjd-law.com

Date: April 25, 2014

111

KC_Docs_001277

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: JORGENSEN FORGE CORP.

Signed for by: ~~(signature)~~
Print Name and Title: MILES D. DYER    DIRECTOR, ENVIRONMENTAL PROGRAMS

Authorized Representative(s) designated to receive notices under this MOA:
    Name: Jeffrey B. Kray
    Company Name: Marten Law PLLC
    Address: 1191 2nd Ave Suite 2200 Seattle WA 98101
    Phone Number: 206 292 2608
    Email Address: jkray @ martenlaw.com

Date: April 29, 2014

- 26 -

KC_Docs_001278

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:  Kaiser Cement Corporation (n/k/a Hanson Permanente Cement, Inc.)
- for "Related Entities" Kaiser Cement Corp. (n/k/a Hanson Permanente Cement, Inc.)<br>and its wholly-owned subsidiary, Kaiser Gypsum Company, Inc.

Signed for by: _____

Print Name and Title: Charles E. McChesney II, V.P. & Secretary, Hanson Permanente Cement, Inc.
& V.P. & Secretary, Kaiser Gypsum Company, Inc.

Authorized Representative(s) designated to receive notices under this MOA:

> Name: Steven F. Hill, Esq.
> Company Name: Miller Nash LLP
> Address: 500 Broadway Street, Suite 400, Vancouver, WA 98660
> Phone Number: (360) 699-4771
> Email Address: Steve.Hill@MillerNash.com

> Name: Charles E. McChesney II, Esq.
> Company Name: Three Rivers Management, Inc., agent for Kaiser Cement & Kaiser Gypsum
> Address: Manor Oak One, Suite 200, 1910 Cochran Road, Pittsburgh, PA 15220
> Phone Number: (412) 208-8839
> Email Address: charles.mcchesney@trmi.biz

Date: April 25, 2014

-26-

KC_Docs_001279

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:  King County

Signed for by: _Dow Constit_____

Print Name and Title:  Dow Constantine
                       King County Executive

Authorized Representative(s) designated to receive notices under this MOA:

   Name:  Kathryn L. Gerla
   Company Name:  King County Prosecuting Attorney's Office
   Address:  900 King County Administration Building
             500 Fourth Avenue
             Seattle, WA 98104
   Phone Number:  (206) 477-1168
   Email Address:  kathryn.gerla@kingcounty.gov

Date: _4·2·14_

- 26 -

KC_Docs_001280

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: Lafarge North America Inc.

Signed for by:

Print Name and Title: William G. Miller

                Vice President and Associate General Counsel

Authorized Representative(s) designated to receive notices under this MOA:

    Name: Steven C. Kohl

    Company Name: Warner Norcross & Judd

    Address: 2000 Town Center, Suite 2700, Southfield, MI 48075

    Phone Number: 248-784-5141

    Email Address: skohl@wnj.com

Date: April 22, 2014

- 26 -

KC_Docs_001281

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:        Longview Fibre Paper and Packaging, Inc. d/b/a KapStone
                            Container Corporation


Signed for by:
Print Name and Title:       Matthew Kaplan
                            Chief Operating Officer


Authorized Representative(s) designated to receive notices under this MOA:

Name:                       Loren R. Dunn
Company Name:               Riddell Williams P.S.
Address:                    1001 Fourth Avenue, Suite 4500, Seattle, WA 98154-1192
Phone Number:               (206) 624-3600
Email Address:              ldunn@riddellwilliams.com

Date:                       4 - 23 - 14

KC_Docs_001282

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: *For administrative convenience only, these entities shall be referred to collectively as the "***Lynden Parties.***"*

*7100 1st Ave. S, Seattle, LLC*

Signed for by: _____
Print Name and Title: *Everett Billingslea, Manager*
Date: _____

*5600 W. Marginal Way, SW, Seattle, LLC*

Signed for by: _____
Print Name and Title: *Everett Billingslea, Manager*
Date: _____

*Northland Services, Inc.*

Signed for by: _____
Print Name and Title: *Tom Crescenzi, General Manager*
Date: _____

Authorized Representative(s) designated to receive notices under this MOA:

    Name: *Everett Billingslea*
    Company Name: *Lynden Incorporated*
    Address: *P.O. Box 3757, Seattle WA 98124-3757*
    Phone Number: *(206) 439-5490*
    Email Address: *ehb@lynden.com*

    Name: *Tisha Pagalilauan*
    Company Name: *Cascadia Law Group PLLC*
    Address: *1201 Third Avenue, Suite 320, Seattle WA 98101*
    Phone Number: *(206) 292-2647*
    Email Address: *tpagalilauan@cascadialaw.com*

    Name: *Josh M. Lipsky*
    Company Name: *Cascadia Law Group PLLC*
    Address: *1201 Third Avenue, Suite 320, Seattle WA 98101*
    Phone Number: *(206) 292-2633*
    Email Address: *jlipsky@cascadialaw.com*

KC_Docs_001283

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: Manson Construction Co.

Signed for by: _R L Dolman_

Print Name and Title: _DICK DOLMSETH, CFO_

Authorized Representative(s) designated to receive notices under this MOA:

    Name: Elaine Spencer

    Company Name: Graham & Dunn

    Address: Pier 70 | 2801 Alaskan Way, Suite 300

            Seattle, WA 98121-1128

    Phone Number: 206-340-9638

    Email Address: espencer@grahamdunn.com

Date: _4/21/14_

KC_Docs_001284

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: Merrill Creek Holdings, LLC, a Washington limited liability company

Signed for by: _____

Print Name and Title: Washington Real Estate Holdings, LLC,
                      a Washington limited liability company, its Managing Member
                      Mark Barbieri, Executive Vice President

Authorized Representative(s) designated to receive notices under this MOA:
Name: Ken Lederman, Foster Pepper, PLLC
                Company Name: Merrill Creek Holdings, LLC
                Address: 1111 Third Ave., Suite 3400, Seattle, WA 98101
                Phone Number: (206) 447-6267
                Email Address: ledek@foster.com

Date: April 25, 2014

- 26 -

119

KC_Docs_001285

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:  PHARMACIA LLC (f/k/a Monsanto Company)

Signed for by:

Print Name and Title: L. Glen Kurowski
                      Director, Environmental Affairs
                      Monsanto Company as attorney-in-fact for Pharmacia LLC

Authorized Representative(s) designated to receive notices under this MOA:

Name:                  Mary M. Shaffer, Assistant General Counsel
Company Name:          Monsanto Company
Address:               800 N. Lindbergh Blvd (E2NE)
Phone Number:          (314) 694-3883
Email Address:         molly.m.shaffer@monsanto.com

Date:  MARCH 17, 2014

- 26 -

KC_Docs_001286

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: <u>PACCAR Inc</u>

Signed for by: _____

Print Name and Title: <u>Richard E. Bangert, II</u>
                         <u>Vice President</u>

Authorized Representative(s) designated to receive notices under this MOA:
    Name:  <u>Tod Gold</u>
    Company Name: <u>Joyce Ziker Parkinson, PLLC</u>
    Address: <u>1601 5th Avenue, Suite 2040, Seattle, WA 98101</u>
    Phone Number: <u>206-957-5953</u>
    Email Address: <u>tgold@jzplaw.com</u>

Date: _<u>4/9/14</u>_____

- 26 -

121

KC_Docs_001287

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:     Port of Seattle

Signed by:

Tay Yoshitani
Chief Executive Officer

Date:         4/14/14

Authorized Representative(s) designated to receive notices under this MOA:

|          |                                    |
|----------|------------------------------------|
| Name:    | Susan Ridgley                      |
| Company: | Port of Seattle Legal Department   |
| Address: | PO Box 1209                        |
|          | Seattle WA 98111-1209              |
| Deliveries: | 2711 Alaskan Way                |
|          | Seattle WA 98121                   |
| Phone:   | (206) 787-3416                     |
| Email:   | Ridgley.s@portseattle.org          |

- 26 -

KC_Docs_001288

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:   PRAXAIR, INC.

Signed for by:

Print Name and Title:   MICHAEL   TH. BOURQUE
                        ASSISTANT   GENERAL COUNSEL

Authorized Representative(s) designated to receive notices under this MOA:

Name:   MICHAEL TH. BOURQUE

Company Name:   PRAXAIR, INC.

Address:   39 OLD RIDGEBURY ROAD, DANBURY, CT 06810

Phone Number:   203-837-2675

Email Address:   MICHAEL_BOURQUE@PRAXAIR.COM

Date:   24 April 2014

KC_Docs_001289

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: *PUGET SOUND TRUCK LINES*

Signed for by: *John Bredeson*
Print Name and Title: *JOHN BREDESON*
                      *PRESIDENT & VICE CHAIRMAN BOARD OF DIRECTORS RTD*

Authorized Representative(s) designated to receive notices under this MOA:
    Name: *PATRICK M. PAULICH*
    Company Name: *THORSRUD, CANE, + PAULICH*
    Address: *1325 FOURTH AVE, STE 1300, SEATTLE, WA 98101*
    Phone Number: *206 386 7755*
    Email Address: *ppaulich@tcplaw.com*

Date: *4/25/14*

- 26 -

KC_Docs_001290

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:_____

Signed for by:_____
Print Name and Title:_____

Authorized Representative(s) designated to receive notices under this MOA:

Name:_____
Company Name:_____
Address:_____
Phone Number:_____
Email Address:_____

Date:_____

- 26 -

KC_Docs_001291

IN WITNESS WHEREOF, the Participating Parties enter into this MOA. Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: SEATTLE  BOILER  WORKS, INC.

Signed for by: _____

Print Name and Title: CRAIG  HOPKINS, PRESIDENT

Authorized Representative(s) designated to receive notices under this MOA:

Name: John  T.  Cuehr
Company Name: Hanlihan  Lasky
Address: 3401  Evanston  Av.  N.  Seattle,  Wash.  98103
Phone Number: (206) 547 - 1075
Email Address: jt@hanlihan-law.com

Date: 4/25/14

- 26 -

KC_Docs_001292

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party:  SEATTLE IRON & METALS CORP.

Signed for by:

Print Name and Title:  Alan Sidell, President

Authorized Representative(s) designated to receive notices under this MOA:

  Name: Tod A. Gold
  Company Name: Joyce Ziker Parkinson, PLCC
  Address:  1601 Fifth Avenue, Suite 2040
         Seattle, Wa  98101
  Phone Number:  206 957 5953
  Email Address:  tgold@jzplaw.com

Date:  April 24, 2014

- 26 -

KC_Docs_001293

IN WITNESS WHEREOF, the Participating Parties enter into this MOA.  Each person signing this MOA represents and warrants that he or she has been duly authorized to enter into this MOA by the corporation, municipality, or entity on whose behalf it is indicated that the person is signing.

Participating Party: Washington State Department of Transportation
Signed for by: _____
Print Name and Title: Cam Gilmour, Deputy Secretary

Authorized Representative(s) designated to receive notices under this MOA:

1.      Cam Gilmour
        Deputy Secretary
        Washington State Department of Transportation
        PO Box 47331
        Olympia, WA  98504-7331
        360-705-7027
        GilmouC@wsdot.wa.gov

2.      Megan White
        Environmental Services Office Director
        Washington State Department of Transportation
        PO Box 47331
        Olympia, WA  98504-7331
        360-705-7480
        whitem@wsdot.wa.gov

3.      Deborah L. Cade
        Assistant Attorney General
        PO Box 40113
        Olympia, WA   98504-0113
        360-753-4964
        DeborahC@atg.wa.gov

4.      Robert Hatfield
        Assistant Attorney General
        PO Box 40113
        Olympia, WA   98504-0113
        360-753-1621
        RobertH1@atg.wa.gov

- 26 -

KC_Docs_001294

## EXHIBIT A

| Day 30 after MOA effective date: | • Allocator submits draft Questionnaire to Participating Parties.<br>• Steering Committee is formed. |
|---|---|
| **Day 60:** | • Participating Parties propose additional parties to be invited.<br>• Participating Parties may submit objections, questions, and areas of inquiry to Allocator on draft Questionnaire.<br>• Participating Parties submit CERCLA Section 104(e) responses to Document Repository.<br>• Participating Parties identify proposed EAAs to be included in allocation. |
| **Day 90:** | • Approval of proposed additional parties and invitations issued.<br>• Allocator submits Questionnaire to Participating Parties.<br>• Participating Parties may decline inclusion of an EAA that involves them. |
| **Day 120:** | • Deadline for any additional parties that were invited to participate to accept. |
| **Day 180:** | • Participating Parties respond to Questionnaire and notify any other Participating Parties implicated in such responses. |
| **Day 270:** | • Participating Parties may identify deficiencies in Questionnaire responses of other Participating Parties and request Allocator to ask additional questions of other Participating Parties. Any Participating Party alleging such a deficiency must notify the implicated Participating Party of the alleged deficiency at the same time as the request to the Allocator. |
| **Day 330:** | • Allocator rules on alleged deficiencies in Questionnaire responses and requests for additional questions. |
| **Day 390:** | • Participating Parties comply with Allocator's ruling on alleged deficiencies and additional questions.<br>• Depositions of fact witnesses, if allowed by Allocator, may begin and may continue until day 470.<br>• Participating Parties provide all additional documents that they intend to use in the Allocation Process, whether regarding themselves or other PRPs. |

KC_Docs_001295

| Day 420: | • Participating Parties may provide documents in reply to documents provided on day 390.  Document submissions close.  After this date, additional documents (other than expert reports) may be submitted only if allowed by Allocator. |
|---|---|
| Day 470: | • End of fact depositions. |

| DEADLINES FOLLOWING ISSUANCE OF ROD | |
|---|---|
| 60 days after the later of EPA issuance of ROD or end of fact depositions. | • Participating Parties disclose expert reports.<br>• Last day to submit requests that Allocator consider legal issues or summary adjudication. |
| Day 120: | • Participating Parties disclose rebuttal expert reports.<br>• Expert depositions begin. |
| Day 240: | • End of expert depositions. |
| Day 250: | • Allocator issues memorandum identifying key issues to be addressed in Position Papers. |
| Day 340: | • Participating Parties submit initial Position Papers. |
| Day 400: | • Participating Parties submit rebuttals. |
| Day 460: | • Participating Parties submit replies. |
| Day 610: | • Allocator issues Preliminary Allocation. |
| Day 670: | • Participating Parties comment on Preliminary Allocation. |
| Day 770: | • Allocator issues Final Allocation. |
| Day 830: | • Participating Parties accept or decline Final Allocation.<br>• Deadline for submission of proposals for any cash-out settlements.<br>• Negotiations regarding Response Cost Settlement and Implementation Agreement begin. |
| Day 860: | • Participating Parties that have received cash-out settlement proposals must provide an initial response. |
| Day 890: | • Deadline for initial meeting in good faith between Participating Parties involved in cash-out settlement negotiations. |
| Day 920: | • Deadline for seeking Allocator's (or other neutral's) assistance with cash-out settlement negotiations. |

KC_Docs_001296

| Day 950: | • End of negotiations regarding Response Cost Settlement and Implementation Agreement. |
|----------|-----------------------------------------------------------------------------------------|
| Day 980: | • Deadline for finalizing any cash-out settlement agreements. |

KC_Docs_001297

# EXHIBIT B

The Federal PRPs' access to information and documents related to this Allocation Process will be governed by the terms below. This Exhibit B is necessary because the Federal PRPs may take the position that they are not precluded from sharing with EPA or other federal agencies information and documents from the Allocation Process.

**A.** **Access to Documents:** The Federal PRPs will have access only to the following documents in the Document Repository:

        1) Responses to EPA's CERCLA Section 104(e) Requests submitted to the Repository by the Participating Parties pursuant to Section 5.1.5.2; and

        2) Documents submitted pursuant to Section B below.

**B.** **Documents Directly Concerning Federal PRPs**

Any Participating Party that wishes to submit documents, including but not limited to Position Papers, Rebuttals, Replies, other briefing, expert reports, fact declarations, Questionnaire responses, or responses to the Preliminary Allocation, that directly concern any of the Federal PRPs shall do so in separate submittals marked with the legend "Contains Information Regarding Federal PRPs." Such documents will be stored in a separate section of the Document Repository. Unless the Participating Party has disclosed and designated documents with the legend "Contains Information Regarding Federal PRPs," the Participating Party may not submit to the Allocator or rely on any other materials to seek to increase the Allocation Share of the Federal PRPs, and the Allocator shall be precluded, in his determination of an Allocation Share to the Federal PRPs, from considering any materials other than documents designated with the legend "Contains Information Regarding Federal PRPs." Each Participating Party agrees that any document not designated with the legend "Contains Information Regarding Federal PRPs" does not have a bearing on the Federal PRPs' Allocation Share.

**C.** **Depositions/Expert Sessions:** The Federal PRPs will be permitted to participate in depositions and expert sessions as follows:

        1) The Federal PRPs may attend only the portions of fact depositions and expert depositions that directly concern the Federal PRPs. The Federal PRPs will have access to only those deposition transcripts, or portions thereof, in which the testimony directly concerns the Federal PRPs.

        2) If the Allocator convenes experts pursuant to Section 5.6, the Federal PRPs may attend only the portions of the sessions that directly concern the Federal PRPs. The Federal PRPs will have access to only those session transcripts, or portions thereof, that directly concern the Federal PRPs.

The Allocator may, in his discretion, prescribe procedures to implement the requirements of this Section C.

KC_Docs_001298

**D.**   **Allocation:**   The Federal PRPs will have access to only the following portions of the Preliminary Allocation, Responses to Preliminary Allocation, and Final Allocation:

      1)   Text and supporting documents regarding the Federal PRPs' Equitable Shares; and

      2)   Allocation Shares allocated to Absent Parties, Defunct Parties, and Recalcitrant Parties and text and supporting documents regarding same.

**E.**   **Communications:**   The Federal PRPs shall not participate in discussions between the Allocator and the Participating Parties unless the Allocator determines that the discussions directly concern the Federal PRPs.

133

KC_Docs_001299

## EXHIBIT C

Any claims or potential claims by The Boeing Company against the United States related to the United States' alleged past or present ownership or operation of, or past or present arrangement for disposal of hazardous substances at or from, Air Force Plant 17, Boeing Plant 2, North Boeing Field, or other facilities that Boeing now owns, leases, or operates or may have owned, operated, or leased in the past. This includes claims or potential claims for costs, damages, or amounts incurred or to be incurred for response to releases of hazardous substances or other contamination at, under, near, or emanating from any of the foregoing facilities, or any other surrounding areas, including but not limited to the Lower Duwamish Waterway, Duwamish Sediment Other Area, Southwest Bank, Slip 4, and other locations.

KC_Docs_001300