1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

KING COUNTY,

              Plaintiff,

11

        v.

Civil Action No. 2:14-cv-01957-BJR

12
13

TRAVELERS INDEMNITY CO.,
PROVIDENCE WASHINGTON
INSURANCE CO., *et al.*,

14

ORDER GRANTING IN PART AND
DENYING IN PART KING COUNTY'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
TRAVELERS' MOTION FOR
SUMMARY JUDGMENT

15

              Defendants.

16
17
18

## I.      INTRODUCTION

19

        Plaintiff King County brings this insurance action against, *inter alia*, The Travelers

20

Indemnity Company and Travelers Casualty & Surety Company, f/k/a The Aetna Casualty and

21

Surety Company (collectively, "Travelers").[1]  King County alleges that Travelers and other

22

Defendants in this action each breached their duty to defend the County against enforcement

23

action by the United States Environmental Protection Agency (EPA) and the Washington

24
25

---

[1] This case concerns eight policies issued by Aetna Casualty & Surety Company and one policy issued by Travelers Indemnity Company.  Dkt. 175, Ex. 2.  The polices are all addressed in this Order as Travelers policies.

1

1
2

Department of Ecology (DOE) related to the contamination of the Lower Duwamish Waterway and the Harbor Island Superfund sites.  Dkt. 175, Pl.'s Second Am. Compl. at 10–11.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

Both King County and Travelers move for partial summary judgment on the issue of whether Travelers breached its duty to defend King County against state and federal agency action.  Joining Travelers in its Motion for Partial Summary Judgment [Dkt. #296] are Defendants Providence Washington Insurance Company ("Providence"), Hartford Accident and Indemnity ("Hartford") and its associated companies—First State Insurance Company, New England Reinsurance Corporation, and Twin City Fire Insurance—and Employers Insurance of Wausau ("Wausau").[2]  These Defendants are united in their position that King County did not tender any "suit" that triggered their duty to defend under their respective commercial general liability (CGL) policies.  King County asserts that its claims meet the minimum standard for coverage—that is, they are "conceivably" covered by Defendants' policies—and moves for judgment that Travelers, Hartford, Providence, and Wausau have breached their respective duties by refusing to defend the claims.  Additionally, King County moves for summary judgment on its bad faith claims against Travelers, Providence, and Hartford.

18
19
20
21
22
23
24

Having reviewed the parties' briefing, the record of the case, as well as the relevant legal authority, the Court concludes that Travelers, Providence, and Wausau have each breached their duty to defend.  Therefore, the Court denies Travelers' Motion for Partial Summary Judgment [Dkt. #296].  Relying on the same conclusion, the Court will grant King County's Motion for Partial Summary Judgment insofar as it seeks a ruling that Travelers, Providence, and Wausau each breached their duty to defend.  As for King County's bad faith claims, the Court finds that

25

[2] Defendant Zurich American Insurance Company also joined Travelers' motion.  However, the Court received a notice of settlement from King County and Zurich prior to the issuance of this order.

2

1    the County has not carried its burden to demonstrate that the insurers acted unreasonably and

2    thus denies the motion for summary judgment on these claims.

3                                    II.      BACKGROUND

4            King County has been implicated in the contamination of two Superfund sites in the

5    Seattle area—the Lower Duwamish Waterway (LDW) site and the Harbor Island site.  Superfund

6    sites are those sites designated under the Comprehensive Environmental Response,

7    Compensation, and Liability Act (CERCLA) for investigation and remediation of contamination.

8    *See Anderson Bros., Inc. v. St. Paul Fire and Marine Ins. Co.*, 729 F.3d 923, 927 n.2 (9th Cir.

9    2013).  CERCLA is administered by the EPA, while the Washington DOE administers its own

10   state environmental cleanup scheme, the Model Toxics Control Act (MTCA).   RCWA

11   70.015D.010, *et seq.*  As part of its enforcement action pursuant to CERCLA, EPA designates

12   "potentially responsible parties" (PRPs), while DOE designates "potentially liable parties"

13   (PLPs) under the MTCA.  Designees under both statutory schemes are subject to strict liability

14   for environmental contamination.  Finding no practical or legal difference between the two

15   designations, the Court uses the terms interchangeably.  The County has been designated as a

16   potentially responsible party (PRP) with respect to both sites and has worked cooperatively with

17   EPA and DOE, as well as with other responsible parties, including the City of Seattle, the Port of

18   Seattle, and The Boeing Company to effectuate and fund response and remedial action at both

19   sites.

20           In July 2013, King County tendered four claims related to this response action to

21   Travelers and the other Defendants in this case demanding that they assume the County's

22   defense against enforcement action by EPA and DOE.  Two of these claims are at issue in King

23   County's motion for summary judgment—"Lower Duwamish Waterway Superfund Site RI/FS,

3

Cleanup, and Cost Allocation" (hereinafter, "LDW Claim") and "East Waterway Sediments, Operable Unit 10, Harbor Island Superfund Site" (hereinafter, "Harbor Island Claim").[3] Travelers moves for summary judgment as to the same two claims and also moves for summary judgment as to a third claim tendered by King County after this suit was initiated—the 2016 Natural Resources Damages Assessment (hereinafter, "NRD Claim").

### A. Lower Duwamish Waterway Superfund Site RI/FS, Cleanup, and Cost Allocation

In its tender, King County notified Travelers of the following with respect to enforcement action at the LDW site:

> On December 1, 2000, the United States Environmental Protection Agency (EPA) proposed the Lower Duwamish Waterway (LDW or Site) for inclusion on the National Priorities List under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA or Superfund), 42 U.S.C. 9601 et seq. EPA has notified King County that it is a Potentially Responsible Party (PRP) at the Site and demanded that it negotiate an administrative order with EPA and with other PRPs at the Site to perform a Remedial Investigation/Feasibility Study (RI/FS). On August 2, 2000, the Washington Department of Ecology (Ecology) notified King County that it was a Potentially Liable Party (PLP) under the Washington Model Toxics Control Act (MTCA), Chapter 70.105D RCW, and demanded that it enter into an administrative order with it and with other PLPs to perform an RIIFS at the Site (Appendix F). EPA and Ecology share statutory enforcement authority over cleanup of the Site.
>
> On December 28, 2000, EPA and Ecology, on the one hand, and King County, The Boeing Company, The City of Seattle, and the Port of Seattle, on the other hand, executed their Administrative Order on Consent for Remedial Investigation/Feasibility Study (RI/FS AOC), No. CERCLA 10-2001-0055 (US EPA Region 10) and No. OOTCPNR-1895 (Ecology)(Appendix G). King County has and will continue to incur defense costs and cleanup costs under the RI/FS AOC.
>
> On February 28, 2013, EPA issued its Proposed Plan, Lower Duwamish Waterway Superfund Site proposing its final cleanup remedy for the Site.1 EPA expects to issue its Record of Decision (ROD) in 2014. In anticipation of EPA's

---

[3] Two of the claims tendered to the Defendants involve suits in which the County was a third-party defendant. These suits were settled, and the County now concedes that there is no ongoing duty to defend against the suits. Dkt. 348 at 2. Whether any costs associated with these suits and their settlements may be reimbursed under the Defendants' policies is not at issue in this Order.

4

> approval of its final cleanup plan and issuance of the ROD, King County, The Boeing Company, the City of Seattle, and the Port of Seattle are initiating an allocation mediation process to reallocate past RI/FS costs and EPA and Ecology oversight costs as well as assign shares of financial responsibility for future cleanup costs for the LDW Site. King County has and will incur defense costs reallocating past costs and allocating future costs and will incur future cleanup costs.

Dkt. 298-5, Ex. 14 at 3.   The County attached copies of the relevant agency correspondence to its tender. *Id.* at 9.

### B.  East Waterway Sediments, Operable Unit 10, Harbor Island Superfund Site

In its 2013 tender, the County notified Travelers of the following with respect to the Harbor Island site:

> EPA listed the Harbor Island Superfund Site on the National Priorities List on September 8, 1983. EPA later established the East Waterway Sediments operable unit (EW-OUl0) of the Harbor Island Superfund Site. On April 21, 2006, EPA notified King County that it considered it a potentially responsible party at the EW-OU10 and that EPA expected King County to cooperate with the Port of Seattle in performing a supplementary RI/FS (SRI/FS) for the EW-OU10 (Appendix H). On March 27, 2006, King County, the Port and others entered into a Memorandum of Agreement (EW-OU10 MOA) to perform the SRI/FS (Appendix I).

> King County has and will continue to incur defense costs and cleanup costs under the SRI/FS and the EW-OU10 MOA.

*Id.* at 7.

### C.  2016 Natural Resources Damages Assessment

In February 2016, King County tendered a new claim to Travelers, demanding that it assume its defense against enforcement action by the Elliott Bay Trustee Council—composed of the National Oceanic and Atmospheric Administration (NOAA), DOE, and the Suquamish and Muckleshoot Indian Tribes.  Dkt. 175, Pl.'s Second Am. Compl. ¶¶ 45–46; Dkt. 298-15, Ex. 24 at 2.  On January 29, 2016, the Council sent a letter notifying the County that it was potentially liable for contamination in both the LDW and Harbor Island Superfund sites.  Dkt. 298-15, Ex.

24 at 2.  The letter further stated that, based on a preliminary investigation of contamination at these sites, the Council would proceed with a Natural Resources Damages (NRD) Assessment. *Id.*  The Council described the letter as the County's "formal invitation and notification of [its] opportunity to participate."  *Id.*

Travelers acknowledged King County's tender of the LDW and Harbor Island Claims and requested further information regarding these claims.  Dkt. 297-7, Ex. 7.  The parties contest the ensuing sequence of events that culminated in this lawsuit, filed in December 23, 2014.  Dkt. 1.  To date, Travelers and the other Defendants named in this suit have not assumed King County's defense and maintain that they are not required to do so based on their interpretation of the duty-to-defend provisions of their respective policies.  To that end, Travelers—joined by Providence,[4] Hartford, and Wausau—now moves for partial summary judgment on King County's claims alleging a breach of the duty to defend.  Dkt. 296.  King County likewise moves for summary judgment, arguing that the events underlying the LDW and Harbor Island Claims amount to "suits" that triggered the duty to defend pursuant to the policies issued to it by Travelers, Providence, Wausau, and Hartford.  Dkt. 299.  King County has also brought claims of bad faith breach of the duty to defend against the same parties and moves for summary judgment on those claims.  *Id.*

### III.   DISCUSSION

**A.  Summary judgment standard in a duty-to-defend case**

Ordinarily, a court examining questions of insurance coverage shall grant summary judgment only if the movant shows that there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a).  Under Washington law, however, the duty to defend is "based on the *potential*

---

[4] Providence has also filed its own motion for summary judgment [Dkt. #295], the merits of which will be addressed in a separate order.

for liability," and thus summary judgment on this issue may be granted in favor of the insured if there are any facts in the Complaint that "could conceivably impose liability upon the insured within the policy's coverage." *Jorgensen Forge Corp. v. Ill. Union Ins. Co.*, No. 13-1458-BJR, 2015 WL 9595410, at *3. (W.D. Wash. April 29, 2015) (internal quotations omitted). Therefore, summary judgment in favor of King County will be appropriate if it is conceivable that the County is the target of enforcement action sufficient to trigger Travelers' duty to defend. Travelers will not be relieved of the duty to defend—or entitled to summary judgment on this issue—unless the claim is "clearly not covered by the policy." *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007).

**B. Travelers breached its duty to defend.**

Travelers' policies provide, in relevant part, that Travelers will "[d]efend any *suit* against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof . . ." *E.g.* Dkt. 297-2, Ex. 2A at 13.[5]  The term "suit" is not defined in these policies, which is typical of CGL policies drafted prior to the passage of pollution-control laws like CERCLA and the MTCA.[6]  *Kitsap Cnty v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998).  Since the enactment of CERCLA, however, state and federal courts have been divided on the issue of whether enforcement action other than filing a formal complaint in a trial court could trigger an insurer's duty to defend "any suit" against its policyholder.  *Weyerhauser Co. v. Aetna Cas. and Sur. Co.*, 874 P.2d 142, 148 (Wash. 1994) ("The case law across the country is split on what constitutes a 'suit' for purposes of the duty to defend."); 8 Bus. & Com. Litig. Fed. Cts. §

---

[5] Travelers and its predecessor, Aetna Casualty & Surety Company, issued nine separate CGL policies to King County, each with identical policy language regarding the duty to defend.  Dkt. 175, Ex. 2.

[6] Travelers' policies were issued for periods from 1966 to 1978.  Dkt. 175, Ex. 2.  CERCLA was enacted in 1980. *See generally* 42 U.S.C. § 9601, *et seq.*  The MTCA was enacted in 1988.  *See generally* RCWA § 70.105D.010, *et seq.*

90:30 (4th ed. 2016) (collecting cases).[7]  The Washington Court of Appeals directly addressed

this issue for the first time in *Gull Indus. v. State Farm Fire and Cas. Ins. Co.*, 326 P.3d 782

(Wash. App. 2014).  The *Gull* court held that, because "the undefined term 'suit' is ambiguous in

the environmental liability context, [it] may include administrative enforcement acts that are the

functional equivalent of a lawsuit."  *Id.* at 790.  However, "agency action must be adversarial or

coercive in nature in order to qualify as the functional equivalent of a 'suit.'"  *Id.*

---

[7] *See, e.g. Anderson Bros., Inc.* 729 F.3d at 934; *Land O'Lakes, Inc. v. Employers Mut. Liability Ins. Co. of Wisconsin*, 846 F.Supp.2d 1007, 1021 & n.16 (D. Minn. 2012) (surveying case law and applying "majority view . . . that a PRP letter is a 'suit' for purposes of a CGL policy."); *Dutton–Lainson Co. v. Cont'l Ins. Co.,* 279 Neb. 365, 778 N.W.2d 433, 449 (2010) ("Whether an insurer is required to provide coverage on a policy should not be dependent on whether the EPA proceeds with administrative remedies or files litigation. A PRP letter is the functional equivalent of a 'suit' as described in the insurance policies, and therefore, the insurers had a duty to defend [the insured]."); *R.T. Vanderbilt Co. v. Cont'l Cas. Co.,* 273 Conn. 448, 870 A.2d 1048, 1063 (2005) ("[A] PRP letter issued by the EPA will *always* constitute a suit within the meaning of standard comprehensive general liability insurance policy language." (emphasis in original)); *Johnson Controls, Inc. v. Emp'rs Ins. of Wausau,* 264 Wis.2d 60, 665 N.W.2d 257, 264 (2003) ( "[R]eceipt of a potentially responsible party (PRP) letter from the EPA or an equivalent state agency, in the CERCLA context, marks the beginning of adversarial administrative legal proceedings that seek to impose liability upon an insured.... Therefore, a reasonable insured would expect this letter to trigger its CGL insurer's duty to defend." (footnote omitted)); *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 622 (Colo. 1999) ( "[T]he term 'suit' is ambiguous, and ... an EPA action under CERCLA is sufficiently coercive to constitute a 'suit' as that term is used in the insurance policies."); *Ryan v. Royal Ins. Co. of Am.,* 916 F.2d 731, 741 (1st Cir.1990) (potential liability alone, without any adversarial or coercive action by an administrative agency, is not a "suit"); *Hartford Accident & Indem. Co. v. Dana Corp.,* 690 N.E.2d 285, 296–97 (Ind.Ct.App.1997) ( "coercive and adversarial administrative proceedings" are "suits," but less coercive actions such as "mere notification or investigation when no enforcement action is contemplated" are not "suits"); *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 315 (Minn. 1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.,* 766 N.W.2d 910, 919 (Minn. 2009); *Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.,* 445 Mich. 558, 519 N.W.2d 864, 870–71 (1994), *overruled on other grounds by Wilkie v. Auto–Owners Ins. Co.,* 469 Mich. 41, 664 N.W.2d 776 (2003); *Coakley v. Me. Bonding & Cas. Co.,* 136 N.H. 402, 618 A.2d 777, 786 (1992); *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.,* 475 N.W.2d 607, 628–29 (Iowa 1991); *Prof'l Rental, Inc. v. Shelby Ins. Co.,* 75 Ohio App.3d 365, 372, 599 N.E.2d 423 (1991) ("suit" includes "substantial efforts which *force* the insured to take action or suffer serious consequences if the insured fails to cooperate"); *Foster–Gardner,* 18 Cal.4th at 871–72 & n. 8, 77 Cal.Rptr.2d 107, 959 P.2d 265 (citing *Hazen Paper Co. v. U.S. Fid. & Guar. Co.,* 407 Mass. 689, 694–97, 555 N.E.2d 576 (1990) ("[t]he consequences of the receipt of the EPA letter were so substantially equivalent to the commencement of a lawsuit that a duty to defend arose immediately"; no such duty arose as to a different agency letter because it "does not allege the occurrence of any damage that falls within the policy coverage"); *Hazen Paper Co. v. U.S. Fid. & Guar. Co.,* 407 Mass. 689, 555 N.E.2d 576, 581 (1990) ("The consequences of the receipt of the EPA [PRP] letter were so substantially equivalent to the commencement of a lawsuit that a duty to defend arose immediately."); *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.,* 326 N.C. 133, 388 S.E.2d 557, 570 (1990); *Aetna Cas. & Sur. Co. v. Pintlar Corp.,* 948 F.2d 1507, 1517 (9th Cir.1991) (Idaho law); *see also Compass Ins. Co. v. Cravens, Dargan & Co.,* 748 P.2d 724, 728–29 (Wyo. 1988) (CGL policy covered immediate cleanup costs of oil spill, even though no formal claims were filed).

Applying *Gull*, the Court concludes that the EPA and DOE initiated administrative proceedings at both the LDW and Harbor Island sites functionally equivalent to a suit against King County.  Both agencies assumed an adversarial posture by exercising their statutory authority to designate King County as a strictly-liable PRP.  Further, it is clear to the Court that the agencies acted in "serious pursuit of the public interest" in guiding the County in its initial steps toward remediation and cleanup.  *Id.* at 789–90 (quoting *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 742 (1st Cir. 1990)).  Certainly, it is conceivable from the face of King County's notice to Travelers and the attached agency correspondence that King County was facing "significant civil liability" with possible "devastating financial consequences" as it would in a typical lawsuit.  *Anderson Bros.*, 729 F.3d at 930; *Gull*, 326 P.3d at 790.

Travelers counters that the agency letters King County tendered to it are "exactly the type of letter that the *Gull* court expressly found did not trigger a duty to defend."  Dkt. 296 at 15. This argument is unavailing, as a comparison of the facts in this case to the facts in *Gull* demonstrates.  In *Gull*, a service-station owner independently discovered contamination on his property, undertook voluntarily remediation of the contamination, and reported it to DOE.  326 P.3d at 790.  DOE sent a letter to the owner acknowledging receipt of this notice and stating that the agency had *not* determined that the owner was a PLP, despite the owner's assumption of responsibility for the contamination.  *Id.*  Despite the benign nature of this letter, the owner demanded "defense" from its insurer, arguing that the strict liability imposed on contaminators by the MTCA was enough to trigger its insurer's obligation to defend even with no overt action on the part of DOE.  *Id.*  The court of appeals squarely rejected the insured's argument, holding that this passive acknowledgment by DOE was not functionally equivalent to a suit such that it should trigger an insurer's duty to defend.  *Id.*  Here, in contrast, the EPA and DOE designated

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

King County as a PRP (and PLP) and were actively demanding remedial action on the part of the County.[8]

Travelers does not refute that King County was formally designated as a PRP.  Rather, it argues that all action taken by the County prior to the County's tender was completely voluntary and cooperative, and, therefore, not adversarial or coercive.  The County responds that coercion and cooperation are not mutually exclusive in the environmental enforcement context.  The Court agrees.  Once a party bears the scarlet letters "PRP," it may be called upon at any time to assume responsibility for the cleanup effort.  Indeed, "it makes no difference whether an insured voluntarily cleans up contamination or waits until government intervention—it is liable either way."  *Gull*, 326 P.3d at 790.  CERCLA and the MTCA are both strict-liability schemes that require responsible parties, once notified, to participate in and fund *all* remedial action required at a contaminated site.  Under CERCLA, a responsible party "shall be liable for *all* costs of removal and remedial action," "*any other necessary costs* of response incurred," and "damages for injury to, destruction, or loss resulting from [] a release" of hazardous materials.  42 U.S.C. § 9607(a)(4)(A) (emphasis added).  Similarly, under the MTCA, a responsible party "is strictly liable, jointly and severally, for *all* remedial costs and for all natural resource damages resulting from the releases or threatened releases of hazardous substances."  RCWA § 70.105D.040(2) (emphasis added).  Thus, in every instance, designation as a PRP raises the specter of

---

[8] Travelers mistakenly asserts that this Court previously ruled in the *Jorgensen Forge* case that a PLP letter cannot trigger the insurer's duty to defend because it "does not in and of itself require the property owner to conduct any action."  *Jorgensen Forge Corp. v. Ill. Union Ins. Co.*, No. 13-1458-BJR, 2015 WL 9595410, at *4.  (W.D. Wash. April 29, 2015).  The language Travelers quotes is directed to the Court's ruling on a different issue, that is, whether a "claim" had been asserted against the insurer during the relevant policy period, and not the issue of whether that claim triggered the insurer's duty to defend.  *Id.*  In its ruling in *Jorgensen Forge* regarding the duty to defend, the Court makes clear that agency communication assigning environmental liability to policyholders is enough to trigger the duty to defend.  *Id.* at *3.

10

"significant civil liability" regardless of whether the PRP cooperates or not.  *Anderson Bros.*, 729 F.3d at 930.

Agencies utilize this threat as "strong leverage" to encourage PRPs to enter into consent orders and cost-allocation agreements like the ones in this case that, while not formal lawsuits, carry with them the same "financial consequences" that litigation would.  *Gull*, 326 P.3d at 790; *Anderson Bros.*, 729 F.3d at 930 (explaining that EPA sends PRP notices as early as possible to encourage negotiation with PRPs).  Travelers next argues that King County "settled" any suit with the enforcement agencies by entering into the LDW Administrative Order on Consent well before it tendered its claims.  The AOC *did* resolve the question of liability with respect to the RI/FS at the LDW site, but it *only* resolved the question of liability with respect to the RI/FS at the LDW site.  The RI/FS is but one step of the many necessary to address such legal and environmental quagmires.  Travelers' argument, in effect, suggests that the Court should rule that an incomplete resolution of liability is sufficient to extinguish the entire proceeding and relieve it of its duty to defend its policyholder.

Considering the nature of environmental enforcement proceedings in this case, as well as the unique summary judgment standard in duty-to-defend cases generally, the Court concludes that Travelers breached its duty to defend.  King County presented Travelers with a tender of claims that were conceivably covered by its policies requiring defense of suits.  Travelers' Motion for Partial Summary Judgment is, therefore, denied in full.[9]  The Court recognizes that DOE and EPA instituted enforcement proceedings well before King County sent its tender to

---

[9] Although the record is less developed with respect to the NRD Claim, the Court applies the same reasoning and denies Travelers' motion for summary judgment as to this claim.  The parties have not presented the Court with the County's 2016 tender of this claim, but both parties agree that it was given.  Dkt. 175, Pl.'s Second Am. Compl. ¶¶ 45–46; Dkt. 298-15, Ex. 24 at 2.  The letter from the Trustee Council indicates that the County was designated as a PRP with respect to the NRD process, which is enough to defeat Travelers' motion for summary judgment.  *Id.*

Travelers.  While this significant lapse in time does not excuse Travelers' breach, the Court notes that it raises additional questions regarding the nature of the costs incurred between the time that King County was notified of its PRP status at the Superfund sites and the time of tender.  The Court's ruling is limited to the question of whether King County tendered any claims that were conceivably covered by Travelers' insurance policies and, subsequently, whether Travelers breached its duty to accept coverage and assume King County's defense from that point forward. The remaining question of how certain costs are properly characterized—that is, whether they are defense costs or damages—is a fact question appropriate for resolution after further discovery between the parties.

**C.  Providence and Wausau also breached the duty to defend.**

King County's "cross-motion" for partial summary judgment asserts that, in addition to Travelers, Providence and Wausau have also breached their respective duties to defend.  These two insurers issued policies to King County with operative language substantially similar to the duty-to-defend language found in Travelers' policies.  The policies obligate each insurer to "defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent." Dkt. 300-5, Ex. 3 at 8 (Wausau); Dkt. 300-4, Ex. 4 at 4 (Providence).  Having concluded that Travelers breached its duty to defend under the terms of its policy, the Court reaches the same conclusion with respect to Providence and Wausau.  Accordingly, the Court grants King County's Motion for Partial Summary Judgment insofar as it seeks a judgment that Providence and Wausau breached their duty to defend "any suit."

**D.  King County has not met its burden for its claims of bad faith.**

The remainder of King County's Motion for Partial Summary Judgment concerns its bad faith claims against Travelers, Providence, and Hartford.  "An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded."  *American Best Food, Inc. v. Alea London Ltd.*, 229 P.3d 693, 700 (Wash. 2010).  "Whether an insurer acted in bad faith is a question of fact."  *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)).  "Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Smith*, 78 P.3d at 1277.  "The policyholder has the burden of proof" on a claim for bad faith.  *Id.*  "If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably."  *Id.*

King County has not met its burden.  The County argues that the Court should apply a per se rule that any insurer who breaches its duty to defend is liable for bad faith.  Dkt. 299 at 17 ("So long as a claim against a policyholder is conceivably covered, an insurer with a duty to defend must defend that claim and failure to do so constitutes bad faith.").  But in doing so, King County improperly conflates the standard for finding breach and the standard for finding that the breach was in bad faith, leaving no opportunity for the insurer to adduce "evidence that it did not act in bad faith and . . . that its denial of coverage was justified."  *Smith*, 78 P.3d at 1277.

Here, Travelers and Providence[10]  were faced with claims presenting a "vigorously contested issue"—that of whether certain environmental enforcement actions constituted a "suit"

---

[10] The Court notes that Hartford's policy differs from the other Defendants' policies in that it is an umbrella policy that applies only to "any claim or suit against the insured seeking damages on account of injury or damage . . . and which no underlying insurer is obligated to defend . . ."  Dkt. 300-6, Ex. 4.  This policy is excess to an underlying primary insurance policy issued by another insurer that became insolvent several decades ago.  Dkt. 152 at 2.  Hartford previously moved for summary judgment on King County's bad faith claim, arguing in part that it did not have a duty to defend because its umbrella policy did not obligate it to "drop down" to defend the County when the

for which they were obligated to provide defense. *Gull Indus.*, 326 P.3d at 788.  In 2013, when the claims were tendered, the Washington courts had not yet addressed the issue directly, which left the insurers without guidance regarding their role in administrative enforcement proceedings. King County argues—and rightly so—that even in the midst of this uncertainty, its insurers were required to subordinate their interests in favor of King County's interests as the insured.  *See American Best Food, Inc.*, 229 P.3d at 700.  This Court certainly has been clear that insurers were required to do so in this case.  But even a clear breach of the duty to defend cannot be the sole basis for a finding that the insurer also committed the tort of bad faith.  *See id.* at 415 (Owens, J., concurring/dissenting) ("This court has long recognized that breach of an insurance contract and the tort of bad faith are separate claims that are analyzed independently.  Breach of an insurance contract is neither necessary, nor sufficient, to establish the tort of bad faith."); s*ee also Greer v. Northwestern National Insurance Co.*, 743 P.2d 1244, 1249–50 (Wash. 1987) (engaging in a separate analysis of breach of an insurance contract and bad faith).  There must be a separate finding that the insurer's conduct in breaching its duty was unreasonable, frivolous, or unfounded.

Here, the insurers' conduct was not frivolous or unfounded.  Whether their conduct was unreasonable presents a closer question.  However, unlike in a duty-to-defend analysis, the Court is not required to construe the facts in the light most favorable to the insured.  The Court must hold King County to its burden of producing evidence that the insurers acted unreasonably in

---

primary insurer was insolvent. Dkt. 123.  This Court rejected Hartford's arguments as unpersuasive and denied summary judgment on this theory. Dkt. 152.  The County contends that the order denying summary judgment on that theory amounts to an affirmative finding that Hartford does, in fact, have a duty to defend and that it breached that duty in bad faith.  The County's argument strains the terms of the Order.  The Court did not rule that King County had affirmatively established that Hartford had a duty to defend and breached it in bad faith.  Rather, the Court ruled that Hartford had failed to establish as a matter of law that it did *not* breach the duty to defend in bad faith.  Thus, the Court is not persuaded that its previous order compels the result that the County seeks with respect to Hartford.

14

determining that activity outside the ordinary course of litigation triggered their obligation to defend "any suit."  The County has not met this burden, and the Court denies the County's Motion for Partial Summary Judgment as to its bad faith claims against Travelers, Providence, and Hartford.

## IV.    CONCLUSION

Having concluded that Travelers breached its duty to defend, the Court denies Travelers' Motion for Partial Summary Judgment [Dkt. #296] in full.  The Court grants King County's Motion for Partial Summary Judgment [Dkt. #299] in part and enters judgment that Travelers, Providence, and Wausau each breached their duty to defend.  The Court denies King County's Motion for Partial Summary Judgment as to its bad faith claims.

Dated this 10th day of February, 2017.


Barbara Jacobs Rothstein
U.S. District Court Judge

15